**Lynn MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CONAGRA, INC., d/b/a Northwest Fabrics and Crafts, Defendant.**

**Civ. No. 90–036–D–2.**

United States District Court, S.D. Iowa, Davenport Division.

Jan. 21, 1992.

Malinda Schoeb, Jamison Ann Milford and Tedrick A. Housh, Jr., U.S. Dept. of Labor, Kansas City, Mo., for plaintiff.

Eugene DeShazo, Kansas City, Mo., Charles E. Miller and Robert V.P. Waterman, Lane & Waterman, Davenport, Iowa, for defendant.

MEMORANDUM OPINION, RULING GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND ORDER

VIETOR, Chief Judge.

Plaintiff Lynn Martin, Secretary of Labor, United States Department of Labor ("Secretary"), brings suit against defendant ConAgra, Inc., doing business as Northwest Fabrics and Crafts ("NWF & C"), under the Fair Labor Standards Act of 1938, as amended ("Act"), 29 U.S.C. § 201 *et seq.*, to enjoin NWF & C from violating certain provisions of the Act. The parties have filed cross-motions for summary judgment and have agreed that this case can be disposed of based on stipulated facts and the motions for summary judgment. Each party has also filed a resistance brief and oral argument has been heard. The motions are submitted.

Summary Judgment Standard

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e). To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.,* 837 F.2d 836, 838 (8th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf,* 669 F.Supp. 291, 295 (D.Minn.1987). The quantum of proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Johnson,* 669 F.Supp. at 295–96.

On a motion for summary judgment, the court views all the facts in the light most

favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *United States v. City of Columbia, Mo.,* 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990).

### Facts

The parties have stipulated to the following facts. NWF & C is a multi-state retail chain of stores that sells fabrics, craft items and related materials and supplies to the general public. At each individual retail store, NWF & C employs a store manager, one or more assistant managers, a bookkeeper and numerous salespersons.

The sales force is primarily part-time and composed of individuals who have a knowledge of and an interest in sewing or making crafts. In most instances, these individuals are homemakers, raise children or go to school. Few, if any, of the sales people have other employment. Most of these individuals work because they enjoy being around fabrics or crafts and enjoy the break from their routine.

All employees are hired to sell the company's inventory during their scheduled work hours, and no one is required to sew garments or make craft items as a condition of employment. At a pre-employment interview, each applicant for work at NWF & C is informed of the opportunity to participate, on a voluntary basis, in the Company's display model program. Some employees choose not to participate in the display model program, and participation is not a requirement for a job. Those who do not participate do the job they were hired to do with no adverse effect on their employment or on their opportunity for advancement.

The program is simple in operation. Periodically, the store manager or the company will select patterns and fabric swatches for garments that are seasonally appropriate. A sign-up sheet is posted by the pattern, and employees who choose to do so may sign up to make the garment. Employees are free to substitute other fabrics and other patterns, so long as they are acceptable to the store manager, the criteri-

on being to produce a garment that, when displayed, will attract or inspire customers to buy fabric. The program is similar for craft kits or projects. The store provides all of the materials and supplies except for sewing machines, and the employees are free to make the garments or craft items for themselves, family members, friends, or even for private resale.

NWF & C does not sell completed garments. Rather, the completed garments and craft projects made by participants in the display model program are theirs to do with as they choose after the display period. The only requirement imposed on participants by the store is that the project be completed by an agreed-upon date, generally two weeks, and displayed in the store for approximately six weeks.

For each project, the employee gathers the materials and supplies from the store's inventory, writes the items up on a ticket and removes them from the store. The only exception occurs when a project is not completed and returned for display as agreed. In those instances, the employee pays the employee discount price for the materials and supplies removed from the store.

The entire program is flexible in practice, and employees' special needs are accommodated. At the Davenport store, numerous employees have clothed their families, made prom dresses, wedding outfits, and confirmation dresses through the program, all at no cost to the participant-employee for materials required to make the display item. No employee is coerced to participate in the display model program and participation in the display model program is in no way related to any employee's employment opportunities with NWF & C. The Davenport store's assistant manager does not participate in the program and is the second highest paid employee at the store.

The Secretary stated in her enforcement position published in the Federal Register that:

Such display garment programs are considered beneficial by employers and employees. The employees find the pro-

gram beneficial because many of them are enthusiastic home sewers. The display garment programs are of advantage to consumers because they can see finished products. The employers are pleased since they can display model garments—which are constructed with personal care—to their customers.

53 Fed.Reg. 45706, 45719 (Nov. 10, 1988).

The parties also stipulate to NWF & C's written policy concerning the display model program.

### Discussion

■ The Secretary's action against NWF & C is based upon the fact that NWF & C does not keep records of the time spent by participants making garments and crafts at home for use in NWF & C's display model program. Section 15(a)(5) of the Fair Labor Standards Act makes it unlawful for any person to violate section 11(c), the recordkeeping provisions, of the Act. *See* 29 U.S.C. §§ 211(c), 215(a)(5).

Under the Act, the Secretary is charged with the responsibility of providing and enforcing regulations relating to industrial homework. *See* 29 U.S.C. § 211(c) & (d). Regulations regarding recordkeeping requirements for the activities of employees who work at home are found at 29 C.F.R. section 516.31. These regulations were most recently amended in 1988. *See* 53 Fed.Reg. 45706, 45726 (Nov. 10, 1988); 29 C.F.R. § 516.31. At that time, the Secretary articulated her enforcement policy regarding model display programs. According to the Secretary,

time spent by employees in sewing model garments is hours worked under the FLSA and ... such hours must be combined with hours worked at the establishment in recording the total hours in the

workweek and calculating the payment of the minimum wage and overtime pay. 53 Fed.Reg. at 45719. The Secretary further explained it would take no enforcement action where five criteria were present:

(1) The employees' work is voluntary;
(2) The materials (e.g., patterns, fabrics, and notions) are provided to the employees free or at no more than their cost to the employer;
(3) The employees retain ownership of the model garments after the display period;
(4) An accurate *record in homeworker handbooks is maintained of all hours worked in the home-sewing activities;* and
(5) The employees are paid for all hours worked, both in the stores and in the home-sewing activities, in accordance with the provisions of the FLSA.

*Id.* (emphasis added).[1]

The Secretary's determination that the recordkeeping provisions of the Act apply to display model programs is entitled to substantial deference. *See Martin v. Occupational Safety & Health Review Comm'n,* —— U.S. ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991). Furthermore, when an employer contends it is exempt from the Act, the employer "has the burden of establishing the exemption clearly and affirmatively." *Donovan v. Williams Chemical Co., Inc.,* 682 F.2d 185, 191 (8th Cir.1982) (citations omitted); *cf. Carlson v. City of Minneapolis,* 925 F.2d 264, 265 (8th Cir.1991) (for purposes of the Fair Labor Standards Act, City had burden of showing that employees plainly and unmistakenly came within the claimed exception). Because the Secretary's interpretation of the regulations is reasonable, *see Martin,* 111 S.Ct. at 1176, and because

---

**1.** At oral argument, counsel for NWF & C referred the court to a proposed amendment to the bill H.R. 2707. *See* 137 Cong.Rec. S12871 (daily ed. Sept. 12, 1991). The amendment would preclude the Secretary from expending funds on model garment enforcement policy where the model garment program meets the following conditions:

(1) The employee's work is voluntary.

(2) The patterns, fabrics, and notions are provided by the employers at no cost to the employees.
(3) The employees retain ownership of the model garments after the display period;
(4) The model garments are in fabrics, styles and sizes determined by the employees to be appropriate for the employees' use.

Research conducted by the court indicates that this amendment has not become law.

NWF & C has not clearly and affirmatively shown that it is exempt from the Act, these factors weigh heavily in favor of the Secretary.

The Secretary's position in this case is that employers, including NWF & C, must maintain an accurate record of all hours worked in model garment/display program home sewing activities. *See* 29 C.F.R. § 516.31. This is so, the Secretary argues, because the activities of participants engaged in defendant's display model program constitute "work" within the meaning of the Act. In other words, the employer-employee relationship extends to these activities.

NWF & C, on the other hand, contends that time spent in making display model garments and crafts does not constitute compensable work as contemplated by the Act, is not primarily for the benefit of the employer, and is not part of the employer-employee relationship. According to NWF & C, therefore, the time spent in making display model garments and crafts is not covered under the Act.[2]

As the parties correctly point out, disposition of this case depends on whether the employment relationship, and therefore coverage under the Act, extends to the time spent making display models by individuals who are otherwise employed by NWF & C to sell its product at its retail establishment. If coverage under the Act does exist, then NWF & C is required to maintain a record of the hours worked by those persons creating display models.

There is an abundance of case law that addresses whether certain activities constitute work, or whether certain individuals are employees, under the Act. *See, e.g., Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (religious foundation's associates are "employees" within

the meaning of the Act because they work in contemplation of compensation); *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961) (members of cooperative, who made knitted, crocheted and embroidered goods in their homes for delivery to cooperative, are "employees" under the Act); *Steiner v. Mitchell,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (where it is part of employees' principal activity, time spent changing clothes and showering must be counted in measuring work-time); *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947) (railroad company trainees, who as prospective yard brakemen participate in a training course several days long, are not "employees" under the Act); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (time necessarily spent by employees in walking to work on employer's premises is working time under the Act); *Jewell Ridge Coal Corp. v. Local No. 6167,* 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945) (under the Act, time spent by miners traveling underground between entrance and working face of the mine is compensable time); *Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944) (time spent on employer's premises, by fireguards subject to call, including time spent idly or in recreation, is working time under the Act); *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944) (underground travel by miners to and from working face of the mine is work under the Act).

The leading case for determining whether work is covered by the Act is *Tennessee Coal.* In *Tennessee Coal,* the Supreme Court defined work as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily for the benefit of the employer and his business." *Tennessee*

---

**2.** The wage and recordkeeping provisions of the Act are applicable to "Employers" and "employees." *See* 29 U.S.C. §§ 211, 203(d) & (e). "Employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). "Work" is a term left unde-

fined by the statute, but "it is clear and undisputed that the Fair Labor Standards Act does not apply in the absence of an employer-employee relationship." *Goldberg v. Whitaker*

*Coal,* 321 U.S. at 598, 64 S.Ct. at 703.[3] Of course, what constitutes working time under the Act "is a question of fact" depending on the particular circumstances in each case, and the question must be determined "in accordance with common sense and the general concept of work or employment." *Hultgren v. County of Lancaster,* 913 F.2d 498, 504 (8th Cir.1990) (quoting *Central Missouri Telephone Co. v. Conwell,* 170 F.2d 641, 646 (8th Cir.1948)); *see also Armour & Co. v. Wantock,* 323 U.S. at 133, 65 S.Ct. at 168; *cf. Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (in determining whether an individual is an "employee," the court should examine the circumstances of the activity as a whole rather than any one particular factor). And the fact that an individual works at home is not dispositive of the issue of "employee" status under the Act. *Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376, 1384 (3d Cir.1985).

It is clear that participants in the display model program are performing physical or mental exertion. They are crafting or sewing components into a finished product. There does not appear to be any dispute regarding this part of the analysis.

The parties disagree over whether the display model program, or the employees' activity in constructing garments or crafts for the program, is controlled or required by NWF & C. The parties agree that the employees' decision to participate in the display model program is completely voluntary, that employee participation is not a requirement for their job, and no employees' wages, hours, opportunity for advancement, or other terms and conditions of employment are in any way affected by participation or nonparticipation in the program.

In arguing that it does not control or require the display model program, NWF & C places great weight on the fact that individual participation in the program is completely voluntary.[4] NWF & C also relies on its contention that the only requirements imposed on the participants relate to completion time and quality of the finished product. In its view, this is insufficient to find that the program is controlled or required by NWF & C. According to NWF & C, the Secretary must prove that employees are "forced" to participate or that they are "not free" to spend their time on their own behalf. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. at 694, 66 S.Ct. at 1195.[5] In NWF & C's view, the fact that many employees have provided clothes for their families and made special event dresses at no cost to themselves, other than for the time spent cutting and sewing, along with the fact that the completed garment or craft item belongs to them rather than

---

*House Corp.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961) (Whittaker, J., dissenting).

**3.** Factors considered by the Court in determining whether work is covered by the Act vary with the cases. In *Steiner v. Mitchell,* the Court looked to whether activities performed by the individual were an "integral and indispensable" part of the employees' principal work activity. *Steiner,* 350 U.S. at 256, 76 S.Ct. at 335. In *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. at 692, 66 S.Ct. at 1195, the Court stated that "only when an employee is required to give up a substantial measure of his time and effort is compensable working time involved." At times, the Court has also used an "economic reality" test to determine whether an individual is an employee under the Act. *See Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. at 33, 81 S.Ct. at 936. In the instant case, this court reaches the same result regardless of how the test is characterized.

**4.** As part of the record, NWF & C submitted employee statements. In general, the statements verify that participation in the program is voluntary, and that in the employees' opinion the display model program is of great benefit to themselves.

**5.** Defendant's reliance on this language is misplaced. In *Anderson,* the Court held that time necessarily spent by employees in walking to work on the employer's premises is working time under the Act. *Anderson,* 328 U.S. at 691–92, 66 S.Ct. at 1194. The language relied on by defendant went to whether, in the Court's determination, employees were "forced" to spend time waiting before or after the shift periods. *Id.* at 694, 66 S.Ct. at 1195. In their context, the restrictive words and phrases like "forced" or "not free," which defendant quotes, "do not have the automatic significance [defendant] seeks to give them." *Armour & Co. v. Wantock,* 323 U.S. at 130, 65 S.Ct. at 167. It goes without saying that "words of [the Court's] opinions are to be read in the light of the facts of the [particular] case...." *See id.* at 133, 65 S.Ct. at 168.

the company, makes it unreasonable to claim that the time spent in the program is not time spent on their own behalf.

The court is not persuaded by NWF & C's arguments. While the employees' participation in the display model program may be voluntary, this is not dispositive of the issue of control or requirement. "Employ" is defined by the Act as "to suffer or permit to work." 29 U.S.C. § 203(g). Therefore, the inquiry is not whether the work is voluntary, but rather whether the participants are in fact performing services for the benefit of the employer with the knowledge and approval of the employer. *See Republican Publishing Co. v. American Newspaper Guild,* 172 F.2d 943, 945 (1st Cir.1949). Neither can the employees' statements, to the effect that they do not consider the program "work," control the outcome of this issue. "[T]he purposes of the Act require that it be applied even to those who would decline its protections." *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. at 302, 105 S.Ct. at 1962. As the Court noted in *Tony & Susan Alamo Foundation,* "[i]f an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act." *Id.*

The evidence shows that NWF & C controls the display model program in several ways. NWF & C sets the policies and procedures under which the display model program is performed. This is evidenced by the nineteen-page NWF & C "Operating Policy and Procedure" for the display model program that is a part of the record in this case. *See* Exhibit A. NWF & C determines which of its inventory it wants to promote; it establishes the item to be

made; it establishes the time frame under which components must be returned as a completed item; it sets the time frame for display; and it establishes the method of compensation to those participants who return a display to the store.[6]

The record also shows that the primary benefit of the display model program inures to NWF & C. The participants in the display model program create items which are intended to be used by NWF & C as advertising, i.e., to promote the products that NWF & C sells. NWF & C's policy states that "[d]isplay models are a very important method we use to increase sales." (Exhibit A, p. 1) NWF & C's reliance on the fact that it is not in the business of selling completed garments or crafts is misplaced. NWF & C's business is to sell the components of the displays, and the displays are valuable advertising for NWF & C. A single displayed item can enhance NWF & C's fabric and notions sales, for example, by advertising the company's fabric, thread, buttons, zippers, and patterns. This encourages customers to buy NWF & C's products.

The participants in the display model program work with the company's sales inventory. NWF & C also receives the benefit of having knowledgeable sales associates who have familiarized themselves with the company's products. This familiarity allows the sales associates to more competently advise and assist customers. While the participants in the program do ultimately acquire ownership of the item they produce, the court finds that the primary benefit of the display model program goes to NWF & C.

### Rulings and Order

For the reasons explained above, the motion for summary judgment by defendant

---

6. NWF & C also contends that the Act does not apply to the display model program because there is no contemplation of compensation for participation in the program. *See Walling v. Portland Terminal Co.,* 330 U.S. at 152, 67 S.Ct. at 641 ("The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of anoth-

er."); *Donovan v. Williams Chemical Co.,* 682 F.2d 185, 188 (8th Cir.1982) (the court should determine what the parties intended to determine whether hours are compensable). In the court's view, the fact that the participants decide to participate in the program knowing that they will ultimately get to keep the item produced indicates that there is a "contemplation of compensation."

ConAgra, Inc., d/b/a Northwest Fabrics and Crafts, filed July 25, 1991 is DENIED. The motion for summary judgment by plaintiff Lynn Martin, Secretary of Labor, filed July 25, 1991, is GRANTED.

Counsel for plaintiff is ORDERED to promptly prepare and submit a proposed order for judgment.