Joseph H. **HOLZAPFEL**, and Others Similarly Situated, Plaintiffs,

v.

**TOWN OF NEWBURGH, NEW YORK, and Charles M. KEHOE, Chief of Police, Town of Newburgh Police Department, Defendants.**

No. 95 Civ. 10409 (WCC).

United States District Court, S.D. New York.

Jan. 15, 1997.

---

**1270**

Chamberlain and Kaufman, Albany, NY (Alan S. Kaufman, of counsel), for Plaintiffs.

Drake, Sommers, Loeb, Tarshis & Catania, P.C. Newburgh, NY (Daniel J. Schneider, of counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Following a jury trial resulting in a verdict in favor of defendants Town of Newburgh and Charles M. Kehoe, plaintiff Joseph Holzapfel moves for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 and for a new trial pursuant to Fed.R.Civ.P. 59. For the reasons set forth below, plaintiff's motions are denied.

## I. BACKGROUND

Plaintiff has been a police officer in the Town of Newburgh Police Department since September 1990. Approximately one year after joining the police force, plaintiff was selected to be a police dog ("K–9") handler and was assigned a German Shepherd named Bandit. Under the Town of Newburgh's Standard Operating Procedures, each K–9 officer keeps his police dog at his home. The Town of Newburgh (the "Town") pays for the dog's food, for any necessary equipment, and for veterinary care. The officer is responsible for feeding, grooming, exercising, and training the dog. In addition, the officer must provide the dog with suitable shelter, ensure that the dog receives appropriate veterinary care, and take every reasonable precaution to maintain a high standard of health for the dog. The officer is also required to maintain the cleanliness of the patrol vehicle to which the officer and dog are assigned.

On December 11, 1995, plaintiff filed this suit against the Town and Charles Kehoe, the chief of police for the Town of Newburgh Police Department. Plaintiff alleges that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to compensate him adequately for "off-the-clock" activities that he performed as a police dog handler and assistant trainer. Prior to May 9, 1995, when an injury rendered plaintiff unable to perform his patrol duties, plaintiff worked approximately forty hours per week and received two hours per week of overtime pay for his efforts in tending to Bandit during off-duty hours. Plaintiff, however, asserts that he is entitled to approximately forty-three hours per week of additional overtime pay for time that he claims to have expended on Bandit since 1992. In addition, plaintiff, who is certified as an assistant trainer of police dogs, alleges that between April 1995 and May 9, 1995, he and Anthony Patricola, another Town police officer who had been assigned to be a K–9 officer and whose dog was in training during that time, attended numerous training sessions run by the Orange County Sheriff's

Department. The Town of Newburgh did not have its own training program and had contracted with the Orange County Sheriff's Department to provide training for Officer Patricola's dog. Plaintiff claims that he assisted in training Officer Patricola's dog at these sessions in addition to completing his regular forty hours per week of patrol work and caring for Bandit while off duty. Therefore, according to plaintiff, he is entitled to overtime compensation for his efforts with regard to Officer Patricola's dog.

This court conducted a jury trial in September 1996. The case was submitted to the jury on special verdict questions. The questions, with the jury's answers, are as follows:

> 1. Has the plaintiff Joseph H. Holzapfel proved by a preponderance of the credible evidence that he spent additional time, over and above the 40 hours of regular time plus 2 hours of overtime per week for which he was compensated, in performing work which was (1) reasonably necessary to his duties of feeding, grooming, caring for and training the K–9 unit dog assigned to him and (2) which could not reasonably be performed within such 42 hours of compensated time per week?
> Yes _____ No _X_
>
> 2. Has plaintiff proved by a preponderance of the credible evidence that he performed additional work in training the K–9 dog assigned to Police Officer Anthony Patricola at the direction of defendant Town of Newburgh Police Department or with their knowledge and acquiescence and with the reasonable expectation that he would be compensated for such work?
> Yes _____ No _X_
>
> [If your answer to both Question 1 and Question 2 is "No," you need answer no other questions.]
>
> 3. If your answer to either Question 1 or Question 2 is "yes," how many hours of such additional work do you find that plaintiff performed during the following periods: 1
> December 1992—December 1993 _____ hours
> December 1993—May 1995 _____ hours
>
> 4. Has plaintiff proved by a preponderance of the credible evidence that defendant Town of Newburgh Police Department either deliberately or with reckless disregard of its obligations, failed to pay plaintiff compensation to which he was entitled for work performed during the period from December 1992 to December 1993?
> Yes _____ No _____

1. Under the statute of limitations provision contained in the FLSA, a plaintiff may recover back pay for a period of either two or three years prior to the date on which the employee filed his or her action, *i.e.,* December 11, 1995. The longer period is applicable only if the plaintiff establishes that the defendant wilfully violated the FLSA. 29 U.S.C.A. § 255(a).

In light of the jury's answers to the special verdict questions, the court dismissed plaintiff's complaint.

## II. ANALYSIS

On the instant motion, plaintiff seeks two types of relief: judgment as a matter of law pursuant to Rule 50 and a new trial pursuant to Rule 59.[2]

### A. *Plaintiff's Motion for Judgment as a Matter of Law*

Rule 50(a) authorizes entry of judgment as a matter of law "only if, 'without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Caruso v. Forslund,* 47 F.3d 27, 32 (2d Cir.1995) (quoting *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989)). Rule 50(b) further provides, however, that a motion for judgment must be "made at the close of all the evidence...." In interpreting this provision, the Second Circuit has held that "judgment as a matter of law is limited to those issues 'specifically raised in [a] prior motion for a directed verdict.'" *Cruz v. Local Union No. 3 of IBEW,* 34 F.3d 1148, 1155 (2d Cir.1994) (quoting *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993)). "The rule is well established that a motion for directed verdict at the close of all the evidence is a prerequisite [for judgment as a matter of law]." *Hilord Chemical Corp. v. Ricoh Electronics, Inc.,* 875 F.2d 32, 37 (2d Cir.1989). "Moreover, this procedural requirement may not be waived as a mere technicality." *Cruz,* 34 F.3d at 1155 (citing *Redd v. City of Phenix City, Ala.,* 934 F.2d 1211, 1214 (11th Cir.1991)).

2. Plaintiff's original Memorandum of Law lacked citations to the Record for statements that plaintiff asserted were made by various witnesses at trial. At the court's direction, the plaintiff subsequently submitted a Supplemental Memorandum to remedy this omission, and the defendants submitted a letter brief in response.

■ In this case, plaintiff failed to move for judgment as a matter of law at the close of the evidence on the grounds he currently asserts. Indeed, he failed to make such a motion on any ground. Thus, because of his procedural default, plaintiff now is precluded from asserting that he is entitled to judgment as a matter of law.[3]

### B. *Plaintiff's Motion for a New Trial*

■ Plaintiff contends that the jury's conclusions in this case should be set aside because the substance of the court's special verdict questions and accompanying instructions to the jury constituted legal error and because the jury's findings were against the weight of the evidence. Plaintiff's motion for a new trial under Rule 59, unlike his motion for judgment as a matter of law, is not procedurally barred.[4] Moreover, a less stringent standard applies to a motion for a new trial than to a motion for judgment as a matter of law. *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987). "The district court's grant of a new trial motion is usually warranted only if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 875 (2d Cir.1992) (quoting *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988)). Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence to support the jury's verdict. *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992). In evaluating a motion for a new trial, the court "is free to

weigh the evidence ... and need not view it in the light most favorable to the verdict winner." *Id.* (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978)).

#### 1. The First Special Verdict Question

Plaintiff argues that he is entitled to a new trial because the court improperly framed the issues presented in the first special verdict question. In plaintiff's view, the first question suffered from three serious flaws. In addition, plaintiff asserts that even if the first verdict question was properly phrased, a new trial on that question is justified because the jury's conclusion was against the weight of the evidence.

a. The Requirement that Plaintiff's Off-Duty Activities Must Have Been "Reasonably Necessary" In Order to be Compensable

According to plaintiff, the first verdict question erroneously saddled him with the burden of proving that the overtime work he claims to have performed was reasonably necessary. Plaintiff argues that under pertinent federal employment law jurisprudence there is no requirement that work suffered or permitted by an employer must be reasonably necessary before the employer is obligated to compensate the employee for his or her efforts. According to plaintiff, any amount of time, no matter how lengthy, that a K–9 officer spends on off-duty, dog-care activities should be compensable work time.

■ We disagree. Employees are entitled to compensation only for "work." *Reich*

---

3. Although a party's motion for judgment as a matter of law is procedurally inadequate, relief is nonetheless available to prevent manifest injustice. "If the evidence was insufficient but no motion for directed verdict was made, the court could grant a new trial if it were satisfied that justice so required." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 362 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). However, in such a case, although the court may set the verdict aside, it would be inappropriate for the court to enter judgment in the moving party's favor unless, because of a dispositive issue of law, a new trial could not result in a verdict favoring the nonmoving party. *See Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir.1986) (stating that judgment in favor of the moving party would be appropriate "when, for

example, the [moving party] has immunity from a claim for the type of damages sought"). Here, plaintiff has not established that judgment as a matter of law is warranted.

4. Plaintiff raised his objections to the jury instructions and the substance of the verdict questions both prior to and following submission of the instructions and questions to the jury. With regard to plaintiff's insufficiency of the evidence claim, Rule 59 does not make a motion for judgment as a matter of law a precondition to a motion for a new trial. *Russo v. New York*, 672 F.2d 1014, 1021–21 (2d Cir.1982), *modified*, 721 F.2d 410 (2d Cir.1983); 6A James Wm. Moore et al., *Moore's Federal Practice* ¶ 59.04[5] (2d ed.1996).

*v. New York City Transit Authority,* 45 F.3d 646, 651 (2d Cir.1995). It is well settled that an activity constitutes "work," and is compensable under the FLSA, if it involves "physical or mental exertion (whether burdensome or not)," or the loss of an employee's time, that is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Id.* (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944)).

 In addition, the Portal-to-Portal Act, which amended the FLSA in 1947, states that

> no employer shall be subject to any liability ... on account of the failure of such employer to pay an employee ... [for] activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C.A. § 254(a). The FLSA requires an employer to compensate its employee for the "activities performed either before or after the regular shift ... if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed." *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956). It is determinative whether the activity at issue is "necessary to the business and is performed by the employees, primarily for the benefit of the employer." *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 401 (5th Cir.1976).

Several courts have found, as a general matter, that time spent by a police officer caring for or training his or her assigned police dog during that officer's off-duty hours constitutes compensable work time. *See Andrews v. DuBois,* 888 F.Supp. 213, 216–17 (D.Mass.1995); *Levering v. District of Co-*

*lumbia,* 869 F.Supp. 24, 26–27 (D.D.C.1994); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 277–79 (E.D.Va.1992); *see also Reich,* 45 F.3d at 650 (dicta). This is so because feeding, training, exercising, and otherwise ministering to the needs of a K–9 unit dog is, at least up to a point, "indispensable to the dog['s] well-being and to the employer's use of the dog[ ] in its business." *Reich,* 45 F.3d at 650. As the court in *Nichols v. Chicago,* 789 F.Supp. 1438, 1442 (N.D.Ill.1992), observed, "in order for the canine patrol officer to properly perform his or her principal activity of canine patrol, the canine portion of the work team must be in proper working order."

 Because a basic level of care and attention is essential to ensure a police dog's health and well-being, some off-duty efforts on the part of a K–9 officer to maintain his or her dog clearly amount to "work." However, it does not follow that all off-duty, dog-related activities, no matter how grossly excessive, are sufficiently related to the K–9 officer's principal responsibilities or beneficial to that officer's dog as to warrant overtime compensation. In short, if a K–9 officer's specific exertions, even though of a type that would generally be compensable, exceed reasonable limits, they cannot be considered integral and necessary and therefore do not constitute work.

The issue of whether a K–9 officer is entitled to payment for all of his or her time spent in off-duty, dog-care activities, or whether the employee must first demonstrate that such efforts were reasonably necessary, has not been squarely addressed by the courts.[5] However, outside the canine context, at least two courts have concluded that in order to be compensable, the amount of overtime an employee claims to have spent on efforts related to the employee's principal activities must be reasonable. In *Amos v. United States,* 13 Cl.Ct. 442 (Cl.Ct.1987), the court found that cook foremen at two federal correctional institutions were entitled to

---

5. We note that in *Levering,* 869 F.Supp. at 26, the court stated that the plaintiffs were entitled to compensation under the FLSA for "the actual time spent exercising, feeding, and otherwise caring for the canine detachment dogs." How-

ever, in *Levering,* the defendant did not contend that the thirty minutes per day that plaintiff claimed he spent caring for his police dog was unreasonable, and thus, the court had no need to reach the issue presented in the present case.

overtime compensation for pre- and post-shift time spent in the prisons' control rooms and in traveling to and from those control rooms to work areas. According to the court, this time became an integral part of the performance of the foremen's duties because prison procedure required the foremen to travel to the control rooms to obtain keys, radios; and other necessary equipment. Nonetheless, the court observed:

> Plaintiffs are not necessarily entitled to payment for all the time they each spent in the control room but only for that amount of time *reasonably required*, after gaining possession of the keys and other items, to leave the control room and upon completion of the shift to reenter the control room and return these items. In addition, plaintiffs are entitled to payment for that amount of time *reasonably required*, upon leaving the control room, to walk to and return from the food service area given the actual distance involved over the best routes available to them at these two facilities. To rule otherwise would run the risk of rewarding plaintiffs for lack of diligence in getting and returning the equipment and in walking to and from this work station.

. . . . .

*Id.* at 449 (emphasis added).

Similarly, in *Reich v. IBP, Inc.,* 820 F.Supp. 1315, 1324 (D.Kan.1993), *aff'd and remanded,* 38 F.3d 1123 (10th Cir.1994), the court determined that time spent by meat processing workers putting on certain protective gear and waiting in a "knife room" for their knives to be sharpened was compensable because these activities were integral and indispensable to the safe performance of the workers' occupation. However, citing *Amos,* the court stated that "[e]mployees are entitled compensation for the reasonable time (rather than the actual time) required to put on personal protective gear and obtain sharpened knives." *Id.* at 1328–29. On appeal, the Tenth Circuit agreed that reasonable time was an appropriate measure for deter-

mining compensation and affirmed that aspect of the district court's decision. *Reich v. IBP, Inc.,* 38 F.3d 1123, 1127 (10th Cir.1994).

*Donovan v. United States Postal Service,* 92 Lab.Cas. (CCH) ¶ 34,124, 1981 WL 2352 (D.DC.1981), a district court decision from the District of Columbia, upon which plaintiff principally relies, is not to the contrary. In *Donovan,* the Secretary of Labor and employees of the United States Postal Service ("USPS") brought suit against the USPS seeking overtime compensation for the time the employees spent training and studying for various proficiency and advancement examinations. The USPS contended that the employees' activities were preliminary to their principal activity of distributing mail and therefore were not compensable under the FLSA. In the alternative, the USPS argued that even if the employees' activities did constitute work, the USPS had already paid for a reasonable amount of employee-study time. According to the USPS, the employees were not entitled to payment because only a de minimis number of employees had studied for periods in excess of the time allotted and, in addition, public policy considerations justified the time periods deemed by the USPS to be reasonable. However, USPS did not argue that any specific employees spent more time studying than was required for them to succeed on their examinations, and the court did not squarely address the issue of whether an employee's unnecessary, but work-related activities, are compensable.[6] Thus, the holding in *Donovan* has little bearing on the instant matter in which the issue is whether the plaintiff's specific off-duty, dog-care efforts, which fell within the category of potentially compensable activities, were, in fact, sufficiently integral to the performance of his duties as to warrant compensation. To the extent that *Donovan* may be read to support the proposition that an employee's claim for off-duty time is compensable, even if that

---

**6.** The Supreme Court's decision in *Mitchell v. King Packing Co.,* 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956), is similarly inapposite. Although the Court ruled that the time spent by butchers in sharpening their knives was integral and indispensable to their jobs, there was no contention that the time spent was unreasonably excessive.

time is not reasonably required for the actual performance of his or her duties, we find Donovan *unpersuasive*.[7]

■ Plaintiff also contends that the first verdict question improperly ceded to the jury the court's obligation to determine what constitutes work within the meaning of the FLSA. Whether an activity is sufficiently related to a plaintiff's principal activity as to be compensable under the FLSA is often described as a question of fact. *See Nichols*, 789 F.Supp. at 1441 (citing cases). However, the question of whether a certain activity constitutes work has also been characterized as a question of law. *See Berry v. County of Sonoma*, 30 F.3d 1174, 1180 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 1100, 130 L.Ed.2d 1067 (1995); *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807–08 (11th Cir.1992); *Andrews*, 888 F.Supp. at 215. In dictum, the Supreme Court described this issue as a mixed question of fact and law. *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743, 101 S.Ct. 1437, 1446, 67 L.Ed.2d 641 (1981) ("FLSA claims typically involve complex mixed questions of fact and law—*e.g.*, what constitutes the 'regular rate,' the 'workweek,' or 'principal' rather than 'preliminary or postliminary' activities."). Thus, we concur with the court's determination in *Graham v. City of Chicago*, 828 F.Supp. 576, 582 (N.D.Ill.1993) that the question is most aptly treated as a mixed question of law and fact. To be more precise, the nature of the plaintiff's activities and their relation to plaintiff's job are questions of fact while application of the FLSA to those activities is a question of law.

■ Consistent with this view and mindful of the guidance provided by *Reich v. New York City Transit Authority*, we concluded in an earlier decision in this case that Bandit's care and training were the type of necessary and indispensable activities for which

plaintiff could be entitled to compensation under the FLSA. *Holzapfel v. Town of Newburgh, New York*, 935 F.Supp. 418, 422 (S.D.N.Y.1996). However, whether and to what extent plaintiff's off-duty dog-care activities were reasonably necessary was an issue that the parties disputed and was properly left to the jury to resolve based on the evidence presented.

b. The Requirement that Plaintiff Establish that He Could Not Reasonably Have Performed His Off–Duty Activities Within the Time for Which He Was Compensated

■ According to plaintiff, the second element of the first question unfairly required him to establish that he could not, within the forty-two hours per week authorized by the Town of Newburgh Police Department, reasonably have completed the work for which he sought additional overtime compensation. As plaintiff observes, the regulations caution that work which an employer suffers or permits an employee to engage in outside of normal hours is compensable. 29 C.F.R. § 785.11. An employer is not free to refuse to pay overtime on the ground that the employee could have completed the work during regular hours and thus need not have resorted to working overtime. *Id.; see Reich v. Department of Conservation & Natural Resources*, 28 F.3d 1076, 1082 (11th Cir.1994) ("The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted."). However, with respect to work performed away from the job site or at home, the employer must credit an employee's claim for hours worked only "if the employer knows or has

---

7. Plaintiff's reliance on *Donovan v. Kentwood Development Co., Inc.*, 549 F.Supp. 480 (D.Md. 1982), is also misplaced. In *Kentwood Development*, the court addressed the defendants' argument that a real estate salesman/assistant-resident manager at defendant's property was not entitled to backpay and overtime for the 75 hours per week he claimed to have worked. According to the defendant, it was unnecessary for the plaintiff to work the hours he claimed because "there were other people available to cover the office at all times." *Id.* at 488 (quoting trial

transcript). The court rejected this contention and found that "[i]t is immaterial whether it was necessary for [the employee] to work long hours...." *Id.* However, the issue in *Kentwood Development* was not whether the activities in which the employee was engaged were necessary and of benefit to the employer, as in the present case, but whether the employee was entitled to compensation for time he spent doing work that could have been performed by other employees. Thus, we do not find *Kentwood Development* to be on point.

reason to believe that work is being performed." 29 C.F.R. § 785.12; *see Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981). This element of actual or constructive knowledge is particularly significant in cases in which the employee acts so as to prevent his or her employer from acquiring knowledge of the alleged uncompensated overtime hours. *See Forrester,* 646 F.2d at 414–15.

In the instant matter, plaintiff regularly submitted time sheets indicating that he worked two hours of overtime per week during the period for which he seeks additional compensation. Moreover, plaintiff does not assert that any of his supervisors coerced him into underreporting his time. Thus, plaintiff does not appear to contend that the police department had actual knowledge of his purported overtime work beyond the two hours per week he claimed. *See* Plaintiff's Supplemental Memorandum of Dec. 24, 1995, at 11 (stating "[t]he Chief had no idea as to the actual time it took officer Holzapfel to perform his various K9 duties (page 96 [of Sept. 4, 1996, Trial Transcript] )").

█ However, even in the absence of time sheets or other documentation apprising the Town that plaintiff worked the overtime he now claims, the defendants' constructive knowledge might be imputed from evidence demonstrating the police department's awareness that plaintiff's canine responsibilities were so extensive that he could not have completed them during his regular shift and the two hours per week of overtime the Town allotted. In *Newton v. City of Henderson,* 47 F.3d 746, 749 (5th Cir.1995), for example, the court of appeals indicated that had the evidence clearly established the chief of police's awareness of the plaintiff police officer's need to work overtime in order to meet the demands of the plaintiff's undercover assignment, knowledge of plaintiff's off-duty efforts could justifiably have been attributed to the police department. Consistent with that logic, this court instructed the jury:

> Plaintiff is entitled to compensation for such additional work if and only if it was performed either at the direction of the employer or if the employer actually knew or reasonably should have known that

work was being performed and condoned or acquiesced in its performance. The plaintiff need not show that the defendant expressly authorized the off hours work beyond the two hours per week for which he was compensated. Instead, it will suffice for the plaintiff merely to show that he was assigned duties which could not reasonably be performed during normal working hours or during the two hours of overtime per week for which he was paid.

Trial Transcript of Sept. 5, 1996 at 11. Thus, the court is satisfied that it was proper to include in the first verdict question the condition that plaintiff demonstrate that the time he spent in excess of forty-two hours per week could not reasonably have been performed within the time allotted by the Town of Newburgh Police Department. Because of the absence of any other probative evidence of defendants' actual knowledge, such a showing by plaintiff was necessary in order to establish a legitimate basis upon which to impute to the defendants the requisite constructive knowledge of plaintiff's overtime work.

Plaintiff argues that "an employer has a 'duty to inquire' and an employee's failure to report hours worked is no defense in an FLSA case." Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment as a Matter of Law and for a New Trial dated Sept. 11, 1996, at 6 ("Plaintiff's Memorandum"). In support of this contention, plaintiff relies on *Reich v. Department of Conservation & Natural Resources,* 28 F.3d 1076 (11th Cir.1994), in which the appellate court recognized that "an employer's knowledge is measured in accordance with his 'duty ... to inquire into the conditions prevailing in his business.' ". *Id.* at 1082 (quoting *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 512 (5th Cir.1969)). The court further observed that "[i]n reviewing the extent of an employer's awareness, a court 'need only inquire whether the circumstances ... were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge.' " *Id.* (quoting *People ex rel. Price v. Sheffield*

*Farms–Slawson–Decker Co.*, 225 N.Y. 25, 121 N.E. 474, 476 (1918)).

In *Reich,* the Secretary of Labor brought an action against the State Department of Conservation and Natural Resources (the "Department") alleging infractions of the FLSA's overtime and record-keeping provisions. The court of appeals reversed the trial court's conclusion that, although the Secretary proved a pattern of uncompensated overtime work by officers of the Department during the 1987 through 1990 deer hunting seasons, the Department was not accountable because it had no actual or constructive knowledge of the overtime hours and had issued a policy prohibiting overtime. The court of appeals found that the Department, in fact, had actual knowledge of the officers' overtime work through a 1987 study which disclosed that unreported overtime during deer hunting season was a substantial problem despite the Department's written policy prohibiting all such work.

In addition, the court of appeals agreed with the district court that weekly arrest reports, which revealed that certain officers were not reporting the total number of hours they actually worked during several hunting seasons, were sufficient to alert mid-level supervisory personnel that those officers were working overtime. However, the court of appeals ruled that the district court erred in failing to impute knowledge of the arrest reports' inconsistencies to the Department. Thus, the court of appeals concluded that the Department, alerted by the 1987 report and the inconsistencies between certain officers' time sheets and arrest reports, could have acquired actual knowledge of the overtime problem through the exercise of reasonable diligence.

The uncontested facts of the instant case are markedly dissimilar to those in *Reich v. Department of Conservation & Natural Resources.* Here, plaintiff did not offer evidence that could reasonably have alerted the police department to the possibility that he was working overtime. A far more apposite case is *Newton,* in which the plaintiff, a police officer, sought compensation for unauthorized overtime that he allegedly accumulated while temporarily serving as an undercover drug task force officer with the United States Drug Enforcement Agency. In reversing the district court's finding that the police department had constructive knowledge of the plaintiff's overtime, the appellate court observed that the plaintiff had disregarded the police department's overtime procedures. The court of appeals stated:

> If we were to hold that the City had constructive knowledge that [plaintiff] was working overtime because [the chief of police] had the ability to investigate whether or not [plaintiff] was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime. The fact that the [chief of police] had access to the Task Force's activities means that perhaps he could have known that [plaintiff] was working overtime hours, but the question here is whether he should have known. In light of the fact that [the chief of police] explicitly ordered [plaintiff] not to work overtime and in light of the fact that [plaintiff] admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities, standing alone, is insufficient to support the conclusion that the City should have known that [plaintiff] was working overtime.

*Newton,* 47 F.3d at 749.[8]

c. Plaintiff's Claim that the First Verdict Question was Ambiguous

In plaintiff's view, the first verdict question was improper because it gave the jurors the misimpression that in order for them to find in plaintiff's favor, plaintiff must have established that he "necessarily spent more than 42 hours a week (his entire shift plus two

---

**8.** Also relevant to the issue of the Town's knowledge of plaintiff's alleged overtime is *Forrester* in which the appellate court affirmed the district court's grant of summary judgment for the employer because the employee turned in time sheets which did not include overtime hours, and the employee did not demonstrate that the employer should have known that the employee worked more hours than those claimed on his time sheets. *Forrester,* 646 F.2d at 414.

hours) doing K–9 work...." Plaintiff's Memorandum at 12. We find this contention to be without merit.

■ First, we note that although plaintiff had ample opportunity to object to the challenged question as ambiguous before the jury began its deliberations, plaintiff failed to do so with any specificity. *See Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 710 n. 8 (2d Cir.1983). Moreover, the second part of the first question permits the jury to find for plaintiff if the jury is satisfied that his alleged overtime work "could not reasonably be performed within ... 42 hours of compensated time per week." Given the presence of the term "reasonably" in the clause at issue, plaintiff's assertion that the question is ambiguous is unpersuasive. It would not be reasonable to expect plaintiff to devote his entire work week as a police officer exclusively to caring for his K–9 unit dog. Thus, there is no colorable basis for plaintiff's claim that the jury could have misconstrued the first question as requiring him to demonstrate that, even had he allocated all of his on-duty time to dog care, he would also have needed to expend the additional hours for which he seeks compensation.

### d. Plaintiff's Contention that the Jury's Answer was Against the Weight of the Evidence

Plaintiff argues that he is entitled to a new trial because the weight of the evidence does not support the jury's conclusion that he did not spend any uncompensated off-duty time engaged in necessary dog-care activities that he could not reasonably have performed during the time that the Newburgh Police Department allotted him. In plaintiff's view, "[t]here can be no question that, based on plaintiff's testimony, he spent more than two hours a week devoted to activities such as feeding and walking the dog, cleaning the kennel at home and at work, and cleaning his personal car and his assigned police car that

fit the conditions set in the verdict question." Plaintiff's Memorandum at 16.

■ We find nothing erroneous in the jury's decision to reject plaintiff's claims completely. The jury's resolution of the issues presented by the first verdict question depended principally upon an evaluation of the plaintiff's credibility. As the trier of fact, the jury's credibility assessments are entitled to deference, *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 955 (2d Cir.1988), and this court discerns no persuasive reason to disregard the jury's assessments in this matter.

■ The unconvincing nature of plaintiff's testimony in support of his preposterous contention that he expended approximately forty-three hours of off-duty time caring for his K–9 unit dog every week for several years certainly provided a fair basis upon which the jury could have concluded that the plaintiff's claims were not to be believed. When added to plaintiff's paid working time of forty-two hours per week, his claimed forty-three hours of additional overtime would make a total of eighty-five hours per week, or an average of more than twelve hours per day, seven days a week. This, of course, would have left the plaintiff with very little waking time to eat, tend to his personal hygiene, perform household chores, engage in leisure activities or fulfill his responsibilities as a husband and father. Thus, the jury may well have concluded that plaintiff's claims regarding the off-duty time he spent caring for Bandit were so grossly exaggerated that his entire testimony was unreliable. Because plaintiff offered little beyond his own self-serving statements in support of his overtime claims, we are satisfied that the jury's finding that plaintiff spent no compensable overtime caring for Bandit was not against the clear weight of the evidence.[9]

### 2. The Second Special Verdict Question

Plaintiff contends that the second verdict question improperly imposed upon him the

**9.** At trial, Defendant Kehoe acknowledged that a K–9 officer could reasonably spend between fifteen and thirty minutes per day feeding a K–9 unit dog and cleaning its kennel and exercise area. However, contrary to plaintiff's assertions, Defendant Kehoe's statements are hardly sufficient to establish that plaintiff, in fact, spent the tremendous amount of time plaintiff claims or that, in performing his necessary duties, he spent any time at all beyond the forty-two hours for which he was compensated.

burden of proving either (1) that the Town of Newburgh Police Department affirmatively directed him to train Officer Patricola's K–9 unit dog or (2) that the police department acquiesced to his actions and that he reasonably expected to be compensated for his efforts. According to plaintiff, an employee need not harbor any expectation of compensation at the time the employee engages in overtime work in order for that employee to be due payment for his or her labors. In plaintiff's view, if the employer suffers or permits the employee to engage in work, the employer must compensate the employee.

Plaintiff's entitlement to compensation from defendants depends upon whether the employment relationship between plaintiff and the Town, and therefore coverage under FLSA, extends to the hours plaintiff claims to have spent training Officer Patricola's dog during sessions run by the Orange County Sheriff's Department.[10] The language of the FLSA provides little guidance as to the parameters of the employer-employee relationship. *See Reich v. New York City Transit Authority,* 45 F.3d at 648. However, in *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944), the Court explained that the FLSA applies to "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." In addition, the FLSA defines "employ" as including "to suffer or permit to work." 29 U.S.C.A. § 203(g). Although, it is true that even if an employee performs work voluntarily, he or she is still entitled to compensation, *see Tony and Susan Alamo Foun-*

*dation v. Secretary of Labor,* 471 U.S. 290, 302, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); 29 C.F.R. § 785.11, it is far from clear that plaintiff was under the employ of the Newburgh Police Department when he attended the training sessions at issue.

According to the Supreme Court: "The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152, 67 S.Ct. 639, 642, 91 L.Ed. 809 (1947). An individual who, "without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit," is beyond the FLSA's ambit. *Id.* Clearly some expectation of compensation on the part of an individual for the particular activities at issue, even if that compensation takes the form of in-kind benefits, is a prerequisite to employee status. *See Tony and Susan Alamo Foundation,* 471 U.S. at 301, 105 S.Ct. at 1961 (finding, in part, that religious foundation's "associates," who received food and shelter in exchange for their efforts on behalf of the foundation, are employees within the meaning of the FLSA because they worked in contemplation of compensation); *Martin v. ConAgra, Inc.,* 784 F.Supp. 1394, 1400 n. 6 (S.D.Iowa 1992) (stating that "the fact that the participants decide to participate in the program knowing that they will ultimately get to keep the item produced indicates that there is a 'contemplation of

---

10. The FLSA, as amended in 1985, states that the term "employee" does not include any individual who volunteers to perform services for a public agency if "the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered" and "such services are not the same type of services which the individual is employed to perform for such public agency." 29 U.S.C.A. § 203(e)(4). Additionally, the Administrator of the Wage and Hour Division of the Department of Labor has interpreted this section of the FLSA thus: "An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensa-

tion for services rendered, is considered to be a volunteer during such hours." 29 C.F.R. § 553.101(a). According to the Administrator, "[a]n individual shall not be considered a volunteer if the individual is otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer." 29 C.F.R. § 553.101(b). In the instant case, the issue was not whether plaintiff was acting as a volunteer for either the Orange County Sheriff's Department or the Town of Newburgh Police Department. Rather, the issue was whether plaintiff's activities were within the scope of his employment relationship with the Town of Newburgh.

**1280**

compensation' "), *rev'd on other grounds,* 987 F.2d 1357 (8th Cir.1993). Thus, it was not error for the jury to consider whether plaintiff reasonably expected to be compensated by the Town of Newburgh for his assistance in training Officer Patricola's dog. This is particularly true given plaintiff's failure to demonstrate that the Town of Newburgh Police Department controlled plaintiff's activities at the training classes or that the Town, rather than the Orange County Sheriff's Department, was the primary beneficiary of plaintiff's participation in those classes.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motions for judgment as a matter of law and for a new trial are denied.

SO ORDERED.