**Gary JERZAK, Plaintiff,**

**v.**

**CITY OF SOUTH BEND and South Bend Police Department, Defendant.**

**No. 3:96 CV 0925 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 15, 1998.

Debra Voltz–Miller, South Bend, IN, for Plaintiff.

Thomas L Bodnar, Richard A Nussbaum, II, South Bend, IN, for Defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This cause is before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Second Motion for Partial Summary Judgment. The Court heard oral argument on December 2, 1997. Having considered all relevant information the Court rules as follows.

### JURISDICTION

Jurisdiction is proper pursuant to: 28 U.S.C. § 1331, Federal question jurisdiction; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*; and, the Portal to Portal Act of 1947, 29 U.S.C. § 251 *et seq.*

### BACKGROUND

Plaintiff, Gary Jerzak (Jerzak) has been employed by defendants, the South Bend Police Department and City of South Bend

(collectively, Department) from July 12, 1989 to present. Between September of 1992 and January 24, 1996, Jerzak was assigned to the canine (K–9) unit of the Department. Max was the canine assigned to Jerzak. The time spent on the care of Max during Jerzak's assignment in the K–9 unit is the basis of this action.

Jerzak filed his complaint on December 31, 1996 alleging that the Department failed to properly compensate him for numerous overtime hours he was required to spend caring for Max. He alleges he spent 603 overtime hours in 1994, 594.50 overtime hours in 1995, and 204 overtime hours in 1996. Jerzak claims he is entitled to one and one half times his regular rate of pay for this time. According to Jerzak, these overtime hours were incurred transporting Max to and from work, transporting Max to and from the vet, driving to purchase food and supplies for Max, grooming, feeding and exercising Max, cleaning his squad car, and cleaning his house. Additionally, Jerzak claims that the Department willfully failed to pay him the overtime due. Jerzak requests summary judgment as to all issues claiming he is entitled to judgment as a matter of law.

In response, the Department argues that while Jerzak was assigned to K–9 patrol he was only required to work a seven hour shift. The Department paid Jerzak for eight hours, however, with the understanding that the additional hour per day was allotted for the care of Max. Therefore, the Department asserts that Jerzak had sufficient compensated time in which to care for Max. Additionally, Department points out that Jerzak never complained that the time required for Max's care exceeded the allowable hour, nor did he submit the required overtime forms requesting payment for any additional time spent during the years he was assigned to K–9.[1] The Department further argues that because

Jerzak worked on a twenty-seven day cycle (nine day work weeks with six days on and three off) pursuant to 29 C.F.R. 553.230, no overtime was required unless an he worked more than 165 hours during the twenty-seven day cycle. The Department asserts that Juezak's hours did not exceed this amount and therefore he is not entitled to overtime. Alternatively, even if Jerzak did spend more than the compensated hour in caring for Max the Department argues that typically, the amount of time was *de minimus* and therefore noncompensable. The Department concedes that issues of fact remain regarding the period between February 13, 1996 and May 3, 1996. Finally, the Department claims that its conduct was not willful therefore the two year statute of limitations applies which precludes any claims asserted by Jerzak that occurred prior to December 31, 1994. The Department seeks partial summary judgment as to the issue of the applicable statute of limitations and as to all claims except those arising between March 13 and June 1, 1994, June 29 through September 17, 1994, December 8, 1994 to January 3, 1995, May 19 through June 14, 1995, September 4 to September 30, 1995 and February 13, 1996 and May 3, 1996. (Def. Brief at 7).

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[2] *See Matsushita Elec. Indus. Co. v. Zenith Radio*

---

1. The parties agree to one exception, when Jerzak submitted a blue overtime form requesting reimbursement for extra time spent cleaning Max and his car after an arrest where Max got covered in oil and urine.

2. The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Servs.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust

law. The most that can be said for *Eastman Kodak,* however, is that it did not tinker with *Celotex* and *Anderson,* and possibly involves an attempt to clarify *Matsushita.* This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir. 1994); *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir.1994), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991), *reh'g denied,* 1993 WL 518446. Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–55.

■ Where, as here, cross-motions for summary judgment have been submitted by the parties, the court is not required to grant judgment as a matter of law for one side or the other. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24,* 889 F.Supp. 1057, 1060 (N.D.Ill.1995). Rather, the court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Heublein,* 996 F.2d at 1461; *Judsen,* 889 F.Supp. at 1060; *Buttitta v. City of Chicago,* 803 F.Supp. 213, 217 (N.D.Ill.1992), *aff'd,* 9 F.3d 1198 (7th Cir. 1993).

## DISCUSSION

Jerzak brings his claims under the Fair Labor Standards Act and the Portal to Portal Act alleging that he is entitled to $26,-825.82 in compensation for overtime hours worked between January 1, 1994 and January 24, 1996. He additionally claims he is entitled to $26,825.82 in liquidated damages.

The Department counters that Jerzak is not entitled to additional compensation for his care of Max. He was allotted one hour of paid time per day for this purpose. Furthermore, the Department did not know Jerzak used additional time to care for Max as Jerzak never notified the Department that care of Max required more than the allotted hour and never submitted any overtime forms properly requesting overtime pay for that time. Alternatively, Department argues that if Jerzak did actually work additional time, the *de minimus* doctrine applies and renders any theoretically compensable activities that Jerzak performed non-compensable.

## I. FAIR LABOR STANDARDS ACT

■ The Fair Labor Standards Act (FLSA), when reduced to its essential form, merely requires employers to compensate employees for all hours worked. Fair Labor Standards Act of 1938, § 1 *et seq.,* 29 U.S.C. § 201 *et seq.; Graham v. City of Chicago,* 828 F.Supp. 576 (N.D.Ill.1993). The purpose of the FLSA was to set limits on minimum wages and the number of hours an employee is permitted to work before the employer is required to pay overtime. 29 U.S.C. §§ 206–

207; *Bolick v. Brevard County Sheriff's Dep't,* 937 F.Supp. 1560 (M.D.Fla.1996). Initially, the FLSA was inapplicable to public employees. In 1974 Congress extended the FLSA to the public sector. This extension was challenged on Tenth Amendment grounds but was upheld by the Supreme Court in *Garcia v. San Antonio Metropolitan Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). It is a fact that an employer who knows or should have known that an employee is or was working overtime is obligated to pay overtime. Moreover, an employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation. *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981); *Mumbower v. Callicott,* 526 F.2d 1183 (8th Cir.1975).

 Under the FLSA, an employee who brings suit for unpaid overtime compensation bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *reh'g denied; Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1351 (5th Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981). Thus, the Court examines the evidence presented in this case.

### A. Computation of Work Cycle

The Department argues that because of the structure of its "work cycle" Jerzak could not accumulate all the hours claimed. In addition, due to the cycle, Jerzak's overtime is computed differently than he attempts to compute it.

Section 207(a) of the FLSA requires employers to pay overtime to employees who work more than 40 hours per week. 29 U.S.C. § 207(a); *Alexander v. City of Chicago,* 994 F.2d 333, 334 (7th Cir.1993), *aff'd by Leahy v. City of Chicago,* 96 F.3d 228 (1996). Section 207(k), however, contains a partial exemption from the overtime provisions of § 207(a). Section 207(k) permits public agencies to establish a "work period" that

lasts from seven to twenty-eight days for employees engaged in law enforcement or fire protection activities. In such a circumstance, only employees who work more than 171 hours in a twenty-eight day work period are entitled to overtime pay. 29 U.S.C. § 207(k)(1); 29 C.F.R. §§ 553.201(a), 553.230; *Leahy v. City of Chicago, Ill.,* 96 F.3d 228 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1818, 137 L.Ed.2d 1027. Essentially, an employer with a schedule that qualifies for a 207(k) exemption must pay overtime for work done beyond forty-three hours in a seven-day work period. 29 C.F.R. § 553.230; *see Barefield v. Village of Winnetka,* 81 F.3d 704 (7th Cir.1996), *reh'g denied; Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 805 (11th Cir.1992). Similarly, under section 207(k), the departments must pay overtime only when employees have "tours of duty which in the aggregate exceed" 171 hours in a twenty-eight day period. 29 U.S.C. § 207(k). Additionally, the regulations specifically caution that a work period is not the same idea as a work week or pay period. As used in § 207(k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than seven consecutive days nor more than twenty-eight consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. 29 C.F.R. § 553.224; *See Lee v. Coahoma County, Miss.,* 937 F.2d 220, 224 (5th Cir. 1991).

 The burden is on the employer to prove he has adopted a 207(k) work-week exemption. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1143 (3d Cir. 1983). Moreover, exemptions from the overtime provisions of § 207 are to be narrowly construed against the employer, *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985); *Atlanta Professional Firefighters,* 920 F.2d at 804, and the Act should be interpreted liberally in the employ-

ee's favor. *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); *Hodgson v. University Club Tower, Inc.*, 466 F.2d 745, 746 (10th Cir.1972). The employer must prove applicability of an exemption by "clear and affirmative evidence." *Donovan v. United Video, Inc.*, 725 F.2d 577, 581 (10th Cir.1984)

■ In the present case the Department claims the § 207(k) exemption applies. In support, the Department submitted a copy of a notice provided to employees stating that the department elects a twenty-seven consecutive day work period under § 207(k) beginning July 19, 1985. (Aff.Marciniak, Ex. 3). Department also submitted a copy of an inter-office memo dated July 19, 1985 which states the department adopted a nine day work cycle. (Aff.Marciniak, Ex. 1). Jerzak does not contest that this cycle was in effect. In fact, Jerzak expressly states in his deposition that he was on a twenty-seven day work cycle with six days on and three days off. (Pl .Dep. at 222–23). Officer Boykins' deposition testimony also supports this. (Boykins Dep. at 10). The court finds clear and affirmative evidence that the § 207(k) exemption applies to Department. Therefore, the Court must determine if any questions of fact remain as to whether Jerzak has a claim for additional compensable overtime within any of the applicable work cycles.

### B. Feeding, Grooming, Walking

■ Jerzak contends he is due payment for over 1000 off-duty hours spent on the care of Max. Recent case law indicates that the canines are considered "security equipment" without which the officers' principal activities could not be performed. *See Holzapfel v. Town of Newburgh, N.Y.*, 950 F.Supp. 1267 (S.D.N.Y.1997) (quoting *Steiner*, 350 U.S. at 252–53; *Andrews, supra; Levering v. District of Columbia*, 869 F.Supp. 24 (1994); *Nichols v. City of Chicago*, 789 F.Supp. 1438 (1992)). Feeding, grooming, and walking the dogs are an indispensable part of maintaining the dogs as law enforcement tools. *Andrews v. DuBois*, 888 F.Supp. 213 (D.Mass.1995). These activities are closely related to the work duties of a canine officer. *Id.* (quoting *Steiner v. Mitch-*

*ell*, 350 U.S. 247, 252–53, 76 S.Ct. 330, 100 L.Ed. 267 (1956)). In addition, time spent feeding, grooming, and walking the dogs is time the officers do not have to themselves. Thus, courts have ruled that these activities are performed as part of the regular work of the canine officers in the ordinary course of business, and are time spent working. *Steiner, supra; Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976). Significantly, the majority of courts that have applied the Steiner test to the question of canine home care have likewise determined that time spent caring for police dogs is an integral and indispensable part of the officers' regular work. *Reich v. New York City Transit Auth.*, 45 F.3d 646, 650–51 (2d Cir. 1995) (walking, feeding, grooming, training, and cleaning up after police dogs are integral and indispensable parts of handler's principal activities and are compensable under the FLSA); *Udvari v. United States*, 28 Fed.Cl. 137, 139–40 (Fed.Cl.1993) (time spent caring for police canines may be compensable work but claim barred by statute of limitations); *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274, 279 (E.D.Va.1992) (granting plaintiffs motion for summary judgment on issue of liability because attendance at canine training sessions, unscheduled emergency canine calls, and required attendance at canine demonstrations are "plainly" integral and indispensable parts of officer's principal activities as deputy sheriff). It does not follow, however, that all off duty dog-related activities, no matter how grossly excessive, are sufficiently related to the K–9 officer's principal responsibilities as to warrant overtime compensation. *Holzapfel, supra* at 1273. In order to be compensable, the amount of overtime an employee claims to have spent on efforts related to the employee's principal activities must be reasonable. *Id., see also, Reich v. IBP, Inc.*, 820 F.Supp. 1315, 1324 (D.Kan.1993), *aff'd and remanded*, 38 F.3d 1123 (10th Cir.1994), *aff'd by Metzler v. IBP, Inc.*, 127 F.3d 959 (10th Cir.1997); *Amos v. United States*, 13 Cl.Ct. 442 (1987).

The Department does not argue that Jerzak's care of Max was not compensable work time. What the Department contends is that Jerzak was already compensated. Jerzak worked a seven hour day with an additional

paid hour allotted for care of Max. Jerzak received a total of nine-hours per week for the care of the dog. (his work week consisted of six days on and three days off). This was paid time where Jerzak was not actually on duty.[3] Additionally, the Department argues that even if Jerzak did work additional time beyond the allotted hour, that time was *de minimus* and therefore not compensable.

 The *de minimus* doctrine relieves employers from FLSA liability where otherwise compensable time is so negligible as to be *de minimus. Bobo v. United States,* 37 Fed.Cl. 690 (Fed.Cl.1997). The Supreme Court explained this doctrine in *Anderson v. Mt. Clemens Pottery Co,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515:

> When the matter in issue only concerns a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policies of the FLSA. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* at 692. The Ninth Circuit expressly identified three factors that courts should consider in determining whether otherwise compensable time should be disregarded because it is *de minimus:* "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Lindow v. United States,* 738 F.2d 1057, 1063 (9th Cir.1984). The court also noted that the amount of time per occurrence dedicated to the activity in question should be considered in making a *de minimus* analysis. *Id.* at 1062.

In the present case, the evidence submitted to the court amounts to a "battle of the time sheets." Each party contends its computations are correct. Whether and to what extent Jerzak's dog-care activities were reasonably necessary, were *de minimus,* or were compensable overtime are questions of fact properly left to the jury to decide. Ac-

cordingly, summary judgment as to the time spent feeding, grooming and walking Max is improper.

## II. PORTAL TO PORTAL ACT

 Jerzak contends that under this provision he is entitled to compensation for "time spent transporting Max from home to work, to the veterinarian, or to any special activities." The Portal–to–Portal Act of 1947 was an amendment to the FLSA and provides, in pertinent part, that an employer need not compensate its employees for activities that are "preliminary to or postliminary to" the "principal activity or activities" which an employee is engaged to perform, unless the employer is otherwise required to compensate its employees for such work by custom, contract, or practice. *See* 29 U.S.C. § 254(a)(2) and (b). Thus, the determination whether an activity involves compensable hours worked pursuant to the Portal–to–Portal Act of 1947 depends upon whether the activity is a principal activity or a preliminary or postliminary activity. The term "principal activity or activities" includes all activities that are "integral and indispensable" to the principal activity. *Steiner,* 350 U.S. 247, 76 S.Ct. 330, 100 L.Ed. 267. The test for principal activities and integral and indispensable parts of such activities is "whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business." *Dunlop,* 527 F.2d 394, 401. An employee may engage in more than one "principal activity" during the work day. Moreover, an "activity" need not predominate over all other activities to be considered a "principal activity." *See* 29 C.F.R. § 790.8(a); *Dunlop,* 527 F.2d at 400. Nor must it occur during normal work hours to be a "principal activity." The decided cases make clear that an integral and indispensable activity may well take place before or after an employee's regular work hours. *See generally, Steiner,* 350 U.S. at 247 (changing clothes and showering held to be an integral and indispensable part of the principal work for battery factory workers

---

**3.** This Court notes that Jerzak's claim that he was not paid for any of his duties related to the off duty care of Max is a gross misstatement.

(Pl. Brief at 2). He was, in fact, paid for one hour per day of "off duty" time in order to care for Max.

who used toxic materials and were compelled by circumstances to change and shower in facilities that the employer was required to provide by state law); *Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S.Ct. 337, 100 L.Ed. 282 (1956) (time spent by meat company butchers sharpening their knives held to be an integral and indispensable part of principal activities), *reh'g denied; Barrentine v. Arkansas–Best Freight Sys., Inc.*, 750 F.2d 47 (8th Cir.1984) (truck drivers' time spent on pre-shift safety inspections was an integral and indispensable part of the principal work activity), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985).

 In contrast to integral and indispensable activities, preliminary or postliminary activities are activities spent predominantly in the employees' own interests. *Dunlop*, 527 F.2d at 398–400. Activities are classified as preliminary or postliminary only if they are "undertaken for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Id.* at 398 (quoting *Mitchell v. Southeastern Carbon Paper Co.*, 228 F.2d 934 (5th Cir.1955)); *see also, Leone v. Mobil Oil Corp.*, 523 F.2d 1153 (D.C.Cir.1975) (time spent voluntarily accompanying OSHA inspectors on factory walk-throughs primarily advanced employee, not employer, interests and therefore was not required to be compensated under the FLSA); *Hodgson v. Katz & Besthoff*, 365 F.Supp. 1193 (W.D.La.1973) (drug store cashiers were not entitled to compensation for time spent counting cash balance before beginning regular work shifts where such work was irregular and haphazard, not required by employer, and primarily for employees' convenience in later balancing their accounts); *Cherup v. Pittsburgh Plate Glass Co.*, 350 F.Supp. 386 (N.D.W.Va.1972) (changing clothes before shift of no significant benefit to employer and hence time spent doing so need not be compensated under the FLSA), *aff'd*, 480 F.2d 921 (4th Cir .), *cert. denied*, 414 U.S. 1068, 94 S.Ct.

578, 38 L.Ed.2d 474 (1973). Thus, "[t]he crucial question is not whether the work was voluntary, but rather whether the [p]laintiff was in fact performing services for the benefit of the employer with the knowledge and approval of the employer." *Steiner*, 350 U.S. at 251; *see also*, 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.").

In the present case, Jerzak alleges he is entitled to additional compensation for 1,401.5 off-duty hours of daily care for Max.[4] Jerzak claims eighty of these hours are for transporting Max and for attending veterinary visits, while twenty-seven hours are for purchasing dog food. In contrast to grooming, feeding and walking police dogs, discussed *supra*, recent cases have found that time spent transporting them to and from work is not compensable for purposes of the FLSA. *See generally, Reich*, 45 F.3d 646 (2d Cir.1995) (where activity of commuting involves neither exertion nor loss of time it is noncompensable); *Aguilar v. United States*, 38 Fed.Cl. 431 (Fed.Cl.1997) (time spent transporting canines to and from work is de minimus and not compensable); *Hellmers v. Town of Vestal, N.Y.*, 969 F.Supp. 837 (N.D.N.Y.1997) (officer not entitled to compensation under FLSA for time spent driving to work in a marked police car in his uniform); *Bolick*, 937 F.Supp. 1560 (general rule is that time spent by officers transporting police dogs between home and work is not compensable).

Accordingly, it is this Court's opinion that Jerzack is not entitlet to overtime arising from claims involving the transport of Max to and from work.[5] Summary judgment is proper as to these claims.

### III. WILLFULNESS

 Jerzak alleges that Department's conduct was willful and therefore he is entitled to a three year statute of limitations and potential liquidated damages. The Fair Labor Standards Act allows employees to re-

---

**4.** This is apparently in addition to the one hour per day allotted and already compensated for.

**5.** The travel to and from the veterinarian may be compensable. However, the Department has

submitted a affidavit as to the amount of time such travel routinely takes. It may be *de minimus*. However, this issue is properly left for the jury.

cover back wages for the two years prior to the commencement of the lawsuit. 29 U.S.C. § 255(a) (West 1982). If, however, the employer's violation of the Act is willful, the statute allows employees to recover three years of back pay. *Id.* In this regard, plaintiff bears the burden of establishing that his former employers "either knew or showed reckless disregard for the matter whether [their] conduct was prohibited by the statute." *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

The Supreme Court has stated that an employer's violation is "willful" within the meaning of the Act where it can be shown that the employer knew or acted with reckless disregard of whether it was violating the statute. *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *see also, Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1079 (1st Cir. 1995); *EEOC v. Madison Community Unit,* 818 F.2d 577 (7th Cir.1987); *Anderson v. City of Wood Dale, Illinois,* 93 C 425, 1995 WL 106318 (N.D.Ill. March 9, 1995).

This standard requires more than a mere assertion by Jerzak that the Department knew he was responsible for the care of Max. Jerzak has not provided sufficient evidence to support a willfulness claim. Jerzak's claim that other officers were compensated for the same tasks he performed is misplaced. Officer Boykins was compensated for the care of K–9 dogs he boarded for others. (Boykins Dep. at 11–15). The overtime requests submitted by Boykins all relate to dogs that he kept for others at the specific request of the Police Department. None of the animals was Boykins' K–9 partner at the time he performed the service and submitted the overtime request. This is significantly different from Jerzak's situation. Jerzak did not care for extra K–9 animals, only his own. Furthermore, Boykins specifically states that he was given one hour per day for the care of his own dog and that he only worked a seven hour shift while in the K–9 unit. He does not claim to have received extra overtime pay for the care of his

own dog. The department allowed Jerzak the same paid off-duty time for the care of Max that it allowed Boykins. Additionally, the Court notes that Jerzak did not complain to the department that care of Max routinely required more than this hour, nor did he submit the required "blue" overtime request forms for extra hours expended on Max's care.[6] Similar to the plaintiff in *Levering,* 869 F.Supp. 24, 30, Jerzak has provided no evidence showing that the Department was made aware of the fact that canine care required more than one hour per day. It is difficult to see how the Department can be found guilty of a willful violation of the FLSA when it was not on notice.

This Court finds no evidence of willfulness on the part of the Department. Because the Court finds no evidence of willfulness, the applicable statute of limitations is two years. Accordingly, Jerzak's overtime claims for any hours prior to December 31, 1994 are barred.

### IV. DAMAGES

■ In addition to unpaid minimum wage or overtime compensation, the FLSA entitles a plaintiff to liquidated damages in the full amount of unpaid wages unless the defendant satisfies the court (i) that the defendant acted in good faith and (ii) that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA. 29 U.S.C. §§ 216(b) (West Supp.1993); 29 U.S.C. § 260 (West 1985); *see also, Mills v. Maine,* 853 F.Supp. 551, 554 (D.Me.1994); *Reich v. Newspapers of New England, Inc.,* 834 F.Supp. 530, 542 (D.N.H.1993), *aff'd,* 44 F.3d 1060 (1st Cir.1995); *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407 (5th Cir.1990). The burden of proof in this regard is on defendants. *Burnley v. Short,* 730 F.2d 136 (4th Cir.1984); *Levering,* 869 F.Supp. 24, 30; *D'Camera v. District of Columbia,* 722 F.Supp. 799, 800 (D.D.C.1989). If an employer shows to the satisfaction of the court that the act or omission giving rise to the violation was in good faith and that it had reasonable grounds for believing that its act or omission was not in violation of the FLSA,

---

6. This fact is uncontested. The parties agree that there was one time when the dog needed special

cleaning and Jerzak submitted an overtime request.

the court may; it its sound discretion, award no liquidated damages. 29 U.S.C. § 260.

In the present case, the Department demonstrated its good faith intent to follow the requirements of the statute. The department posted notice of the provisions of the FLSA. It notified all employees of the § 207(k) election and the twenty-seven day work cycle. It made provisions for all K–9 officers to be on duty for seven hours a day and provided an additional paid hour as time to care for the canine partner. Additionally, the Department's actions were reasonable. When overtime was submitted, it was typically paid. When officers were asked to perform extra K–9 duties they were compensated. Therefore, the Court finds that Jerzak is not entitled to liquidated damages.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Second Motion for Summary Judgment is **GRANTED** as to all claims arising prior to December 31, 1994, **GRANTED** as to the issue of liquidated damages, and **DENIED** as to the issue of potential overtime pay. Furthermore, Plaintiff's claims for compensation relating to his transporting the K–9 dog to and from work are dismissed. Should this case proceed to trial, the only issue remaining is whether and to what extent Plaintiff's off-duty dog care activities exceeded the one hour per day paid time provided by the Department and whether such time is compensable or *de minimus*.

Given the narrowness of the issue remaining for trial it behooves the parties and counsel to take advantage of the services of an experienced and competent United States Magistrate Judge to engage in serious in depth settlement discussion at the earliest possible time.

IT IS SO ORDERED.