**Joseph H. HOLZAPFEL, and Others Similarly Situated, Plaintiffs,**

v.

**TOWN OF NEWBURGH, NEW YORK, and Charles M. Kehoe, Chief of Police, Town of Newburgh Police Department, Defendants.**

**No. 95 Civ. 10409 (WCC).**

United States District Court, S.D. New York.

Aug. 1, 1996.

---

Chamberlain and Kaufman (Alan S. Kaufman, of counsel), Albany, New York, for Plaintiffs.

Drake, Sommers, Loeb, Tarshis & Catania, P.C. (Daniel J. Schneider, of counsel), Newburgh, New York, for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

On December 11, 1995, plaintiff Joseph Holzapfel filed this action against defendants Town of Newburgh (the "Town") and Charles M. Kehoe, the Chief of Police for the Town of Newburgh Police Department. Plaintiff has alleged that defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to compensate him adequately for "off the clock" activities that he performed as a police dog handler and assistant trainer. Plaintiff has also asserted a *quantum meruit* claim under New York state law. Plaintiff has moved for summary judgment, pursuant to Fed.R.Civ.P. 56(c), on certain issues relating to his FLSA claim. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Plaintiff became a police officer in the Town of Newburgh Police Department in September 1990. In September 1991, plaintiff was selected to be a police dog (K–9) handler and was assigned a German Shepherd named Bandit. Due to an injury that he sustained while trying to apprehend a suspect, plaintiff has been on injury leave and unable to do patrol work since May 9, 1995. On or about January 1, 1996, the Town retired Bandit and sold him to plaintiff for one dollar.

Following plaintiff's selection as a K–9 handler, the Town sent plaintiff and Bandit to a fourteen-week training program at the Orange County Sheriff's K–9 training facility. Plaintiff was taught the basics of police K–9 work, including caring for his police dog, obedience training, agility training, tracking, criminal apprehension, searches for articles and building searches. Subsequently, in July 1994, Bandit was certified as being trained in narcotics detection. Plaintiff and defendants agree that some ongoing training is necessary to maintain a police dog's skills. Under the Town's Standard Operating Procedures for police K–9 units, police dog handlers "are encouraged to work their dogs during their tour of duty, when time permits, in areas that they are weak in, or on special training needs as designated by the trainer or Sgt. in charge." Appendix D, at 4, attached to Plaintiff's Memorandum of Law. K–9 officers and police dogs also receive two days of training per month at the Orange County Sheriff's K–9 training facility.

Under the Town's Standard Operating Procedures, each K–9 officer keeps his police dog at his home. The Town pays for the dog's food, for any necessary equipment and for veterinary care. The officer is responsible for feeding the dog once a day, ensuring that the dog has fresh water, brushing the dog once a day, giving the dog its heartworm medicine, keeping its nails clipped, providing the dog with shelter, ensuring that the dog receives appropriate veterinary care and taking every reasonable precaution to maintain a high standard of health for the dog. The officer is also responsible for maintaining the cleanliness of the patrol vehicle to which the officer and dog are assigned.

Plaintiff has asserted that until May 9, 1995, his regularly scheduled shifts as a Town police officer totalled forty hours per week. During that time, plaintiff was paid for sixteen hours per month of training at the Orange County Sheriff's K–9 training facility. Plaintiff has asserted that prior to May 9, 1995, he spent the following amounts of off-duty time caring for and training Bandit:

| Activity | Time Per Day | Time Per Week |
|---|---|---|
| Grooming and Bonding (daily) | 60 min. | 7 hrs. |
| Bathing, flea dipping, nail trimming | — | 1 hr. |
| Exercising and walking (workday) | 60 min. | 5 hrs. |
| Exercising and walking (non-workday) | 90–120 min. | 3–4 hrs. |
| Cleaning kennel—home (daily) | 45 min. | 5 hrs. 15 min. |
| Cleaning kennel—work (workday) | 15 min. | 1 hr. 15 min. |
| Cleaning patrol vehicle (workday) | 20 min. | 1 hr. 40 min. |
| Cleaning personal vehicle (daily) | 15 min. | 1 hr. 45 min. |
| Feeding (daily) | 25 min. | 2 hrs. 55 min. |
| Training (daily) obedience, fetch | 90 min. | 10 hrs. 30 min. |
| Training (weekly) [1] | 45 min. (average) | 5 hrs. 15 min. |

1. Plaintiff has alleged that at least once per week, he trained Bandit in each of these skills:

| Activity | | Time Per Day | Time Per Week |
|---|---|---|---|
| **TOTAL:** | (workday) | 6 hrs. 15 min. | 44 hrs. 35 min. |
| | (non-workday) | 6 hrs. 10–40 min. | to |
| | | | 45 hrs. 35 min. |

Prior to May 9, 1995, plaintiff received two hours per week of overtime pay for caring for Bandit during his off-duty hours. Plaintiff asserts that he is entitled to overtime pay for the additional 42½ to 43½ off-duty hours per week that he allegedly worked.[2]

Plaintiff, who is certified as an assistant trainer of police dogs, has also alleged that between early April 1995 and May 9, 1995, he attended approximately 20 eight-hour training classes with Officer Patricola, a Town police officer who had been assigned to be a K–9 officer and whose dog was in basic training during that time. He has asserted that he performed this work in addition to his regular forty hours per week of patrol work and, presumably, in addition to the 44½ to 45½ off-duty hours per week that he allegedly spent caring for and training Bandit. Plaintiff has alleged that he received no compensation for the hours that he spent training Patricola's dog. Plaintiff contends that he is entitled to overtime compensation for those hours.

Plaintiff has alleged that between May 9, 1995, when he ceased to do patrol work, and January 1, 1996, when the Town retired Bandit, he continued to care for Bandit in his usual manner, although he no longer spent 20 minutes per day cleaning his assigned patrol car. Plaintiff asserts that he is entitled to be compensated for this work as well. According to the complaint, however, these allegations relate to plaintiff's state law *quantum meruit* claim. *See* Complaint, at ¶¶ 20–25. Because plaintiff has not sought summary judgment on that claim, we will not consider these allegations at this time.

Plaintiff seeks partial summary judgment on his FLSA claim. He requests an order (1) declaring that he is entitled to be paid overtime for the off-duty hours that he spent caring for and training Bandit and training Patricola's police dog, (2) fixing the number of hours per week that plaintiff spent on each activity listed above and (3) declaring that plaintiff is entitled to liquidated damages.

## DISCUSSION

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law...." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. *See id.,* at 248–49, 106 S.Ct. at 2510–11. In order to defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden on the nonmoving party is tempered, however, by the rule that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

An activity constitutes "work," and is compensable under the FLSA, if it involves "physical or mental exertion (whether

tracking, agility, aggression and criminal apprehension, building searches, box searches and searches for articles.

Plaintiff has also alleged that he trained Bandit in narcotics detection for two hours each week beginning in July 1994. Therefore, beginning in July 1994, the total number of hours per week that plaintiff has alleged that he worked increased by two hours and the daily total increased by an average of seventeen minutes.

2. Under the statute of limitations provision contained in the FLSA, plaintiff may recover back pay for a period of either two or three years prior to the date on which he filed this action, *i.e.,* December 11, 1995. The longer period is applicable only if plaintiff establishes that defendants willfully violated the FLSA. *See* 29 U.S.C. § 255(a). Plaintiff has alleged that defendants acted willfully but does not seek summary judgment on this issue.

burdensome or not)," or the loss of an employee's time, that is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Reich v. New York City Transit Authority*, 45 F.3d 646, 651 (2d Cir. 1995) (internal citations omitted). The FLSA requires an employer to compensate its employee for "activities performed either before or after the regular work shift ... if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256, 76 S.Ct. 330, 335, 100 L.Ed. 267 (1956). An employer must pay its employee overtime "at a rate not less than one and one-half times the regular rate at which [the employee] is employed" for hours worked in excess of forty hours per week.[3] 29 U.S.C. § 207(1).

■ Turning first to plaintiff's claim for overtime compensation for the off-duty time that he spent caring for and training Bandit, we note that several courts have held, in deciding motions for summary judgment, that a police officer's care and training of his assigned police dog during his off-duty hours is an integral and indispensable part of his work activities. *See Treece v. City of Little Rock*, 923 F.Supp. 1122, 1125–26 (E.D.Ark. 1996); *Andrews v. DuBois*, 888 F.Supp. 213, 216–17 (D.Mass.1995); *Levering v. District of Columbia*, 869 F.Supp. 24, 26–27 (D.D.C. 1994); *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274, 277–79 (E.D.Va. 1992); *see also Reich*, 45 F.3d at 650 (*dicta*); *Nichols v. City of Chicago*, 789 F.Supp. 1438, 1442–43 (N.D.Ill.1992) (denying employer's summary judgment motion). Therefore, a K–9 officer must be compensated for the off-duty time that he spends performing the tasks involved in caring for and training his assigned police dog, unless the time devoted to a particular task is *de minimis*. *See Reich*, 45 F.3d at 652–53. The issue, of course, then becomes the amount of time for which the police officer must be compensated.

Defendants do not dispute that they required plaintiff to perform some work caring for Bandit while he was off-duty and that he is entitled to compensation for that work. They argue, however, that summary judgment is inappropriate in this case because there are issues of fact that preclude us from determining, as a matter of law, that plaintiff worked more than two hours per week while he was off-duty. We agree.

The amount of time for which a K–9 officer must be compensated for off-duty care and training of his assigned police dog is typically an issue of fact. *See Treece*, 923 F.Supp. at 1125; *Truslow*, 783 F.Supp. at 279. Plaintiff contends that this case is different, because the only available evidence concerning the amount of time that he spent caring for and training Bandit is his sworn affidavit, in which he states that he worked a total of 44½ to 45½ off-duty hours per week. Plaintiff contends that defendants cannot produce evidence that directly contradicts his affidavit. He argues, therefore, that we should grant summary judgment in his favor and declare that he is entitled to overtime compensation for 42½ to 43½ hours of work per week.

We acknowledge that defendants have not produced evidence in opposition to plaintiff's motion that directly contradicts plaintiff's affidavit by establishing the precise amount of work that plaintiff performed while off-duty. Nevertheless, we conclude that defendants have presented evidence that creates questions of fact concerning the amount and extent of plaintiff's off-duty work. Plaintiff has alleged that while he was off-duty, he fed, groomed, exercised, bonded with and trained Bandit. He has also alleged that he cleaned out his assigned police vehicle and personal vehicle and cleaned the kennels at the police station and at his home. He contends that he spent 44½ to 45½ off-duty hours per week on these activities. Chief Kehoe—who founded the K–9 unit in the Town Police Department, helped to establish the policies under which plaintiff worked and was himself a K–9 officer for four years—has testified that he performed similar duties when he

---

**3.** Overtime for law enforcement personnel may, under certain circumstances, be subject to a somewhat different method of calculation, *see* 29 U.S.C. § 207(k), but neither party contends that this provision applies in this case.

was a K–9 officer and that he never spent more than two or three hours of off-duty time per week caring for and training his police dog. *See* Kehoe Aff., at ¶¶ 2–3; Deposition of Charles M. Kehoe, dated June 10, 1996, at 79–81.

This court recognizes that different police dogs may require different amounts of care and training and that Kehoe's testimony does not directly contradict plaintiff's testimony concerning the amount of off-duty time that *plaintiff* spent caring for and training his police dog.[4] We are not persuaded, however, that it is justifiable to infer from plaintiff's recitation of the duties that he performed that he spent approximately 6 hours per day, and 44½ to 45½ hours per week, of off-duty time caring for and training Bandit. The striking disparity between the amount of time that Kehoe has testified that he spent on off-duty care and training of his police dog and the amount that plaintiff has asserted that he spent performing similar duties provides evidentiary support for this conclusion.

This case is therefore distinguishable from *Levering v. District of Columbia,* which is the only case that plaintiff has cited in which a court, in deciding a motion for summary judgment, fixed the amount of time per day for which the K–9 officers would be compensated for off-duty care of their assigned police dogs. In that case, the employer argued that it had adequately compensated its K–9 officers by paying fifteen minutes of overtime per day for off-duty care of their police dogs. The K–9 officers submitted only one unsupported affidavit from an officer stating that he spent thirty minutes per day on dog care. The court granted summary judgment for the K–9 officers and directed that their damages be calculated on the basis of thirty minutes per day of overtime pay for off-duty care of their police dogs. The court stressed, however, that the employer had provided absolutely no evidence in support of its position. *See Levering,* 869 F.Supp. at 27 & n. 3. Here, by contrast, defendants have introduced some evidence that calls plaintiff's testimony into question.

We therefore conclude that plaintiff is entitled to some amount of overtime compensation for work that he performed during off-duty hours caring for and training his assigned police dog. There are issues of fact, however, concerning the amount and extent of the work that plaintiff performed while he was off-duty. These issues of fact preclude us from granting summary judgment in plaintiff's favor as we cannot conclude, as a matter of law, that he worked more than two hours per week while off-duty, much less that he worked the amount of off-duty hours that he has asserted in his affidavit. Plaintiff may ultimately prove his assertions, but this issue is for a jury to resolve.

Plaintiff's argument in support of his motion relies heavily on *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). That reliance is misplaced. In *Anderson,* the Supreme Court stated that in cases where an employer had failed to keep accurate and complete records of the hours worked by an employee, the employee need only prove that she performed some work for which she was improperly compensated and produce sufficient evidence from which a court could reasonably infer the amount of hours that she worked. At that point, the burden of proof shifts to the employer, who must establish the precise number of hours that she worked or produce evidence that negates the reasonableness of the inference to be drawn from her evidence. *See Anderson,* 328 U.S. at 687–88, 66 S.Ct. at 1192–93. Plaintiff argues that defendants have failed to meet this burden.

The *Anderson* burden-shifting analysis is, however, only applicable if the employer failed to keep accurate and complete records of the hours worked by the employee. In this case, defendants contend that its records, which reflect that plaintiff regularly submitted claims for two hours of overtime pay per week for K–9 grooming, are accurate. *See* Kehoe Aff., at ¶ 6; Exhibit 4, attached to Affidavit of Charles M. Kehoe, dated July 26, 1996. Plaintiff contends that these records are incomplete because they

---

**4.** We also recognize that both Kehoe and plaintiff are parties to this litigation and that each individual's affidavit is self-serving. On summary judgment, however, we cannot make determinations concerning the credibility of these individuals.

reflect only the hours that defendants permitted him to claim as overtime and not the hours that he actually spent caring for and training Bandit while he was off-duty. This issue, like the issue of the amount of off-duty hours that plaintiff spent caring for and training Bandit, is for the jury. The *Anderson* burden-shifting analysis will become applicable only if the jury determines that defendants' records are inaccurate.

At this time, we need not reach the question of whether plaintiff might be compensated for all of the hours that he has asserted that he spent caring for and training Bandit while he was off-duty. Defendants contend that plaintiff is not entitled to compensation for all of those hours because they did not require him to spend more than two off-duty hours per week caring for Bandit. Defendants have asserted that Kehoe told plaintiff when he was interviewed for a position as a K–9 officer that the care of a police dog required approximately fifteen minutes per day of off-duty time. *See* Kehoe Aff., at ¶ 4. Kehoe has stated that plaintiff never informed him that he was spending more than two hours per week of off-duty time caring for and training Bandit. *See id.*, at ¶ 5. Defendant argues that plaintiff cannot spend an "unreasonable" amount of time caring for his police dog and later recover compensation for all of that time by filing suit. In essence, defendants argue that all of the time that plaintiff spent caring for and training Bandit was not "work."

Plaintiff counters that defendants encouraged him to maintain his police dog at a high level of health and training and that he was doing what was necessary to fulfill that directive. He argues that it was defendants' obligation to ensure that he was not performing work for which defendants did not want to compensate him, *see* 29 C.F.R. § 785.13, and that if defendants benefitted from his activities because Bandit was well-maintained and well-trained, all of the time that he spent constitutes "hours worked" and is compensable. At this time, since it is by no means certain that plaintiff will be able to prove that he spent anywhere near 44½ to 45½ off-duty hours per week caring for and training Bandit, we need not resolve this issue.

■ With respect to plaintiff's claim for compensation for the time that he spent training Patricola's police dog, we cannot conclude, as a matter of law, that those activities are an integral and indispensable part of plaintiff's work activities. Plaintiff was, as we recognized above, obligated to train and care for his own assigned police dog. It is not at all clear, however, that providing any care or training for Patricola's assigned police dog was "part and parcel" of plaintiff's duties. Plaintiff seems to be arguing that he sought permission from Chief Kehoe to assist Patricola and that Kehoe implied that he should do so, but "off the clock." *See* Affidavit of Joseph H. Holzapfel, dated July 17, 1996, at ¶¶ 89, 90. Kehoe, however, has testified that he denied plaintiff's request and told plaintiff that if he assisted Patricola, it would be on his own time. *See* Kehoe Aff., at ¶ 7. Furthermore, although plaintiff is a certified assistant police K–9 trainer, there is no evidence in the record that his work duties included the training of other officers' police dogs. In addition, during the time that plaintiff assisted Patricola, Patricola and his assigned police dog were receiving basic training at the Orange County Sheriff's K–9 training facility and presumably were already receiving instruction from a police dog trainer. Because we cannot conclude, as a matter of law, that plaintiff's activities in training Patricola's police dog were integral and indispensable to plaintiff's work activities, plaintiff's motion for summary judgment on this aspect of his FLSA claim is denied.

■ Finally, plaintiff seeks summary judgment declaring that he is entitled to liquidated damages. Any employer who violates § 207 of the FLSA is liable for unpaid compensation plus an equal amount in liquidated damages. *See* 29 U.S.C. § 216(b). Under 29 U.S.C. § 260, however,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any [lesser] amount thereof. . . .

The employer bears the burden of establishing that it meets this standard. *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1987). The burden on the employer is heavy, and liquidated damages are the norm rather than the exception in FLSA cases. *See id.*

Defendants have presented sufficient evidence to persuade us that a question of fact exists concerning whether they acted in good faith and with reasonable grounds to believe that they were not violating the FLSA. The Town was clearly aware that the FLSA required it to compensate its K–9 officers for caring for and training their police dogs while they were off-duty. This awareness is evidenced by the fact that the Town paid its K–9 officers for two hours of overtime per week. Plaintiff asserts that Kehoe and the Town either knew or should have known that plaintiff was spending more than two hours per week caring for and training his dog. Defendants, however, may have believed in good faith, based on Kehoe's experience as a K–9 officer, that two hours per week of overtime compensation was adequate. Kehoe has also asserted that no one in the K–9 unit ever informed him that they were spending more than two hours per week of their off-duty time caring for their police dogs. *See* Kehoe Aff., at ¶ 5. While plaintiff contends that this fact does not absolve defendants of liability for overtime compensation, a reasonable jury could consider this testimony in determining whether defendants acted in good faith. In short, questions of fact exist that preclude us from granting summary judgment on the issue of whether plaintiff is entitled to an award of liquidated damages.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is denied.

SO ORDERED.