**Joseph H. HOLZAPFEL, And others similarly situated, Plaintiff–Appellant,**

**v.**

**TOWN OF NEWBURGH, NY; Charles M. Kehoe, Chief of Police, Town of Newburgh Police Department, Defendants–Appellees.**

**Docket No. 97–7114.**

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 1997.

Decided May 27, 1998.

Alan S. Kaufman, Albany, NY (Jeffrey Chamberlain, Chamberlain and Kaufman, Albany, NY, of counsel), for Plaintiff–Appellant.

Daniel J. Schneider, Newburgh, NY (Drake, Sommers, Loeb, Tarshis & Catania, P.C., Newburgh, NY, of counsel), for Defendants–Appellees.

Before: CARDAMONE, MINER, and LEVAL, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal centers on a K–9 police officer, Joseph H. Holzapfel, who in undertaking to care and provide for the needs of his assigned police dog, claims a substantial amount of overtime for tasks he performed at home. Plaintiff alleges that although he spent 44–45 hours off-duty each week looking after his dog, "Bandit," he received only two hours per week of overtime pay pursuant to police department policy.

Holzapfel brought suit in December 1995 against his employer, the Town of Newburgh, New York, and its Chief of Police, Charles M. Kehoe, alleging violations of the overtime pay provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq. Section 207(a) of that Act makes it unlawful to employ an individual "for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Plaintiff also sought compensation for off-duty hours he spent training a fellow K–9 police officer's dog.

He appeals from a September 12, 1996 judgment entered against him in the United States District Court for the Southern District of New York (Conner, J.), following a jury trial that returned a verdict in favor of the defendants. Plaintiff also appeals from a January 16, 1997 order denying his motion for judgment as a matter of law and for a new trial. *See Holzapfel v. Town of Newburgh (Holzapfel II)*, 950 F.Supp. 1267 (S.D.N.Y.1997).

What we are asked to decide on this appeal is captured in an aphorism: "Every dog has his day, and every man his hour." Bandit was intelligent enough to be selected as a K–9 trainee, and plaintiff has a right to seek, although not necessarily obtain, overtime pay for the hours he spent working with the dog. Underlying this claim however, is the more practical and serious question of whether a municipality that believes such dogs are useful adjuncts in crime investigation and prevention should be required, if indeed it can afford, to pay overtime for all of the at-home hours spent with them. We of course cannot answer that question. But we can provide guidance to the trial court regarding the instructions it should give the jury in this sort of case.

## BACKGROUND

Plaintiff became a police officer for the Town of Newburgh in 1990. A year later, he successfully applied to Chief Kehoe to become a K–9 officer to work with specially trained police dogs. Bandit was assigned to him. Officer Holzapfel worked as a K–9 officer on active duty until he took injury leave on May 9, 1995.

### A. Care, Maintenance, and Training of "Bandit"

Once Bandit was assigned to plaintiff, the defendant Town of Newburgh supplied training aids, toys, food, and veterinary care for the dog. It sent plaintiff and Bandit for 14 weeks of training at the Orange County K–9 Facility where instruction was given on a variety of subjects: obedience training; agility; tracking; box, article, and building searches; car stops; and criminal apprehension. At the end of the training period,

instructors recommended that plaintiff continue training with the dog as much as possible.

Bandit remained with plaintiff at home and at work. Standard operating procedures for the Town of Newburgh assigned K–9 officers responsibility for all aspects of care, maintenance and training for their dogs. The Town scheduled two days per month for retraining, at which time the instructors told plaintiff to work on problem areas between sessions. In 1994, Officer Holzapfel took Bandit back to school for training in narcotics detection and engaged in further narcotics training subsequent to receiving his certification. Plaintiff contends that, in addition to the 40–hour scheduled shifts he worked weekly for the Newburgh Police Department, he spent between 44–45 off-duty hours each week grooming, bathing, feeding, exercising, training, and cleaning up after Bandit.

As a standard policy, the Town of Newburgh paid K–9 officers two hours of overtime each week. Pursuant to instructions, plaintiff filled out the weekly overtime slip in advance, rather than calculate the actual off-duty hours spent with Bandit after they occurred. Although Officer Holzapfel was told that he would be paid for only two overtime hours per week, he was never directed to limit his off-duty activities to those two hours for which he was compensated.

Various members of the police department, including Chief Kehoe, were aware that K–9 officers assumed additional duties. Estimates as to the time involved varied among the trial witnesses. Chief Kehoe acknowledged that the responsibilities—exclusive of training—could add up to at least one hour per day. He was also aware that K–9 officers, including plaintiff, engaged in off-duty training, but did not know how much extra time these officers spent off-duty with their dogs.

### B. *Training Officer Patricola's Dog*

Anthony Patricola was a K–9 police officer who had been assigned a dog that had flunked out of the Town of Newburgh's K–9 training school. In 1995 plaintiff attended a training class offered by the Orange County Sheriff's Department with his wife's Rott-

weiler. After Patricola approached him, two weeks into the class, plaintiff requested permission from the Sheriff's Department to work with Patricola's dog during the training class, and Department trainers consented.

Officer Holzapfel then asked Chief Kehoe to be assigned to work with Officer Patricola's dog. The Chief responded that he could not pay him, but that if Holzapfel wanted to, he could switch shifts and work with the dog on his own time. Plaintiff subsequently changed his hours so as to work with both Officer Patricola's dog and his wife's dog at the training class.

### C. *Proceedings in District Court*

After initiating suit, plaintiff moved unsuccessfully for summary judgment. *See Holzapfel v. Town of Newburgh (Holzapfel I),* 935 F.Supp. 418 (S.D.N.Y.1996). Following the trial, the district judge asked counsel for proposed jury instructions and questions, but ultimately fashioned his own. The text of the first question read:

> Has the plaintiff Joseph H. Holzapfel proved by a preponderance of the credible evidence that he spent additional time, over and above the 40 hours of regular time plus 2 hours of overtime per week for which he was compensated, in performing work which was (1) *reasonably necessary* to fulfill his duties of feeding, grooming, caring for and training the K–9 unit dog assigned to him and (2) which could not *reasonably be performed* within such 42 hours of compensated time per week? (emphasis added).

The jury answered this first question in the negative.

The second verdict question asked the jury:

> Has plaintiff proved by a preponderance of the credible evidence that he performed additional work in training the K–9 unit dog assigned to Police Officer Anthony Patricola at the direction of defendant Town of Newburgh Police Department or with their knowledge and acquiescence and with the reasonable expectation that he would be compensated for such work?

Again, the jury answered in the negative. The remaining two questions were to be answered only if defendants were liable to plaintiff. Since the jury found no liability, the substance of these questions is not at issue on appeal.

After the jury returned its verdict, plaintiff moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 and for a new trial pursuant to Fed.R.Civ.P. 59. Judge Conner denied both motions.

On appeal, plaintiff contends that the two verdict questions accompanying the trial court's instructions are contrary to principles established under the FLSA and that, therefore, he is entitled to a new trial. In addition, Holzapfel argues that he is entitled to judgment as a matter of law with respect to his claim for compensation for the time he spent training Officer Patricola's dog.

## DISCUSSION

### Standard of Review

■ The substance of jury instructions is reviewed *de novo. See United States v. Masotto,* 73 F.3d 1233, 1238 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 54, 136 L.Ed.2d 18 (1996). A jury verdict will be reversed only when an appellant can show that the instructions considered as a whole prejudiced him. *See Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994). An error exists if the jury was misled about the correct legal standard or was otherwise inadequately informed regarding the controlling law, and where such error is other than harmless, a new trial is required. *See id.*

### First Jury Question

### I Question of Fact or Law

■ Before examining the merits of this case, it must first be determined who decides what constitutes compensable work under the FLSA. Different circuits have applied different standards. *Compare Nichols v. City of Chicago,* 789 F.Supp. 1438, 1441 (N.D.Ill.1992) ("Whether an activity is preliminary or postliminary to a principal activity is a question of fact.") (citing *Blum v. Great Lakes Carbon Corp.,* 418 F.2d 283, 286 (5th Cir.1969), *with Andrews v. DuBois,* 888

F.Supp. 213, 216 n. 5 (D.Mass.1995)) ("The First Circuit has held that the determination of whether an activity is an integral and indispensable part of the employees' principal activity is a question of law . . . .") (citing *Ballou v. General Elec. Co.,* 433 F.2d 109, 111 (1st Cir.1970)). The present parties both presume the question is one of law. This presumption strikes us as an oversimplification for, as Judge Conner correctly observed, whether plaintiff is entitled to overtime pay is a mixed question of law and fact. *See Holzapfel II,* 950 F.Supp. at 1275.

Authority for that proposition derives from our own and Supreme Court precedent. *See Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986) ("The question of how the respondents spent their working time on board the Arctic Star is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law. . . ."); *Barrentine v. Arkansas–Best Freight Sys.,* 450 U.S. 728, 743, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("FLSA claims typically involve complex mixed questions of fact and law—*e.g.,* what constitutes . . . 'principal' rather than 'preliminary or postliminary activities.'"); *Freeman v. National Broad. Co., Inc.,* 80 F.3d 78, 82 (2d Cir.1996) ("While we may not disturb the district court's factual findings as to the nature of the plaintiffs' employment absent clear error, we review *de novo* the correctness of the trial court's ultimate conclusion that the plaintiffs are not exempt journalists [under the FLSA].").

■ Thus, in the case at bar, the trial judge was responsible for determining as a matter of law whether plaintiff's activities could potentially constitute "work." The jury was to decide as a question of fact, not only how much of plaintiff's time spent with Bandit fell within the court's definition of "work" and would be compensable, but also how much of that time was spent with the employer's actual or constructive knowledge. If the time plaintiff spent working amounted to more than the two hours per week for which plaintiff was compensated, the district

court was then to apply the overtime provisions of the FLSA.

## II What Activities Constitute "Work"

■■■ Analysis turns first to work as defined in the law. Work is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Work need not be performed during scheduled on-duty hours for an employee to receive compensation. *See Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956) (holding that employees must be compensated for "activities performed either before or after the regular work shift ... if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed"). Neither may overtime compensation be denied solely on the grounds that the employee could have completed his tasks during scheduled hours, thereby avoiding the need for overtime altogether. *See* 29 C.F.R. § 785.11 (1997); *see also Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 419 (5th Cir.1975).

Consistent with precedent in this Circuit, the district court stated that "a K–9 officer must be compensated for the off-duty time that he spends performing the tasks involved in caring for and training his assigned police dog, unless the time devoted to a particular task is *de minimis.*" *Holzapfel I,* 935 F.Supp. at 422; *see also Holzapfel II,* 950 F.Supp. at 1275. In *Reich v. New York City Transit Auth.,* 45 F.3d 646, 651 (2d Cir.1995), we agreed that "walking, feeding, training, grooming and cleaning up are integral and indispensable parts of the handler's principal activities and are compensable as work." We further held that officers of the New York City Transit Authority, to the extent they had to deal with their assigned dogs during their commute to work, *e.g.,* by stopping to take them for a walk during the commute or by cleaning up after the occasional bout of carsickness, were entitled to compensation for this "true dog-care work." *Id.* at 652.

Although compensation was ultimately denied the dog handlers in that case, it was because these occasions were found to be so infrequent and of such brief duration that the work involved was ruled *de minimis.* *See id.* at 653.

Other courts have held that K–9 officers are to be compensated for certain activities performed at home with their dogs. *See generally Rudolph v. Metropolitan Airports Comm'n,* 103 F.3d 677, 681 (8th Cir.1996) (implicitly acknowledging that feeding, grooming, and exercising are compensable work while determining that a regulation deferring to the terms of a reasonable agreement applied); *Karr v. City of Beaumont,* 950 F.Supp. 1317, 1322–23 (E.D.Tex.1997) (holding as a matter of law that the post-shift time plaintiffs spent caring for their police dogs is, a principal activity for which they are entitled to overtime compensation); *Andrews,* 888 F.Supp. at 217 (determining that feeding, grooming, and walking are indispensable parts of maintaining dogs as law enforcement tools, that such activities are closely related to the duties of a K–9 officer, and that therefore, they are time spent working); *Levering v. District of Columbia,* 869 F.Supp. 24, 27 (D.D.C.1994) ("[F]eeding, exercising, and caring for the dogs by officers assigned to the canine detachment constitutes an 'integral and indispensable part' of the officers' work activities, and, as such, time spent on those activities is compensable under the Fair Labor Standards Act."); *Truslow v. Spotsylvania County Sheriff,* 783 F.Supp. 274, 277, 279 (E.D.Va.1992) (same).

## III Time Claimed by Plaintiff as "Work"

### A. *Concern Regarding Plaintiff's Claims*

Once the district court ruled that time spent feeding, grooming, training, exercising, and otherwise caring for Bandit could be compensable, whether Officer Holzapfel actually engaged in such "work" and how much compensable time he spent on those compensable activities were questions of fact for the jury.

An uncritical application of the definition of work, set forth in the preceding section, might lead one to believe that Officer Hol-

zapfel should receive overtime pay for all the hours he testified to having devoted to Bandit's well-being, since we had said in *New York City Transit Auth.* that "true dog-care work" is compensable. *See* 45 F.3d at 651. Yet common sense and policy concerns argue against such a result. At some point, an officer's attention to his assigned dog may not be provided primarily for the employer's benefit but rather out of the caretaker's own sense of love and devotion to the animal in his charge. *Cf. Rudolph*, 103 F.3d at 684 ("Any time beyond the half-hour [provided in a compensation agreement] plaintiffs spent with their canine charges we presume stemmed from their personal devotion to the dogs, and was, therefore, not 'predominantly for the benefit of the employer'....").

### B. *District Court's Approach*

Without some distinction being drawn between compensable and non-compensable time spent by a K–9 officer on an assigned dog, municipalities and their law enforcement units could be obliged to pay large amounts of overtime. Carried to an extreme, this view would ultimately lead to the demise of K–9 officer programs because they would become cost-prohibitive. The district court expressed this type of concern, stating it was not going to charge that plaintiff is entitled to recover for every hour he claims he spent with Bandit or even for all of the hours the jury thinks he spent "unless those hours were reasonably related to what the job requires."

While sharing this concern, we nevertheless think the trial court erred when instructing the jury in this manner. It inserted the qualification "reasonably necessary" in the verdict question and emphasized in its post-trial opinion that Officer Holzapfel's care for Bandit should be "reasonable" and "sufficiently related" to what his employer expected. *See Holzapfel II*, 950 F.Supp. at 1273. The flaw in this approach is that the word "reasonable" is not found in the definition of "work." Rather, the key phrases are "controlled or required," "necessarily and primarily," "integral and indispensable." *See Tennessee Coal, Iron & R.R. Co.*, 321 U.S. at 598, 64 S.Ct. 698; *Steiner*, 350 U.S. at 256, 76

S.Ct. 330. The difference is significant. An employer may require its employee to perform tasks that appear unreasonable, but which nevertheless are performed necessarily and primarily for the employer's benefit, and for which therefore the employee is entitled to be paid. Conversely, an employee may perform a task that seems reasonable in the context of his work, but which the employer neither required nor controlled, and for which therefore the employee is not entitled to be paid.

The subject of the "reasonableness" of the officers' activities was not discussed in *Reich v. New York City Transit Authority*. Instead, we focused only on what activities by a K–9 officer actually would be compensable work, and how much time that work involved. The trial court should have put the jurors in the present case on a similar path. The *Tennessee Coal* test can be helpful to the jury in furnishing a basis for determining the amount of time spent in such a task that should be compensated. When the parties dispute whether the employee expended excessive time in the performance of a compensable task, the jury might be instructed to consider, initially, whether that amount of time was required by the employer. When the answer to this question is, "yes," the time is compensable, and the jury need not proceed to the next question.

If, however, the employer did not require the expenditure of the contested time, the jury should then consider whether the employee expended this time primarily for the benefit of the employer. If the employee was motivated primarily by his or her own pleasure, then the time was not expended primarily for the employer's benefit and it is not compensable; similarly, if the time was expended primarily to inflate the employee's earnings, then the time was not primarily for the employer's benefit and is not compensable. On the other hand, if the employee was devoting the allegedly excessive time to the task primarily for the employer's benefit, then the employee has satisfied his burden as to this part of the test. Armed with this common law definition of work given by the Supreme Court, and aware of the emphasis on the key phrases, the jury would have been

properly equipped to delineate how much, if any, of Officer Holzapfel's off-duty caretaking entitled him to overtime pay.

In our view, looking at the totality of the circumstances, the improper verdict question and instructions could have prejudiced plaintiff. Even if the work was not "reasonably required," nonetheless the employee may be compelled or pressured by the employer to do it, and if so, should be compensated for doing it.

Considering that the evidence could support a conclusion that the Town of Newburgh required its K–9 officers to work more than two overtime hours per week—its standard operating procedures stated that K–9 officers were responsible for all aspects of care, maintenance, and training for their dogs; and Chief Kehoe acknowledged that an officer could spend up to an hour per day caring for a dog, even without training—we believe a different jury should be given the opportunity to consider the evidence under the correct test set forth in the law.

As we noted earlier, some handlers, like some owners, out of love and devotion for their dogs, may choose to spend a great amount of time with them. It might be appropriate therefore for the trial court to explain to the jury that if it finds some of plaintiff's claimed overtime hours per week are on account of personal devotion to the dog, such time spent would not represent compensable work required by the employer or principally for its benefit.

### IV Defendants' Awareness of Plaintiff's Activities

#### A. *Law in General*

For compensation to be awarded, plaintiff's activities must not only satisfy the above definition of work, but must also be performed with the employer's knowledge. Work performed off-site must be counted as time worked only "[i]f the employer knows or has reason to believe that work is being performed." 29 C.F.R. § 785.12 (1997); *see also* 29 C.F.R. § 785.11 (1997) ("[I]f the employer knows or has reason to believe that [the employee] is continuing to work ... the time is working time."); *Forrester v. Roth's*

*I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir.1981) ("[A]n employer who knows or should have known that an employee is or was working overtime must comply with the provisions of [29 U.S.C.] § 207 [mandating overtime pay].").

Moreover, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours. *See Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir.1959); *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir.1995); *Forrester*, 646 F.2d at 414. An employer need not have actual knowledge of such off-site work; constructive knowledge will suffice. *See Reich v. Department of Conservation and Natural Resources*, 28 F.3d 1076, 1082 (11th Cir. 1994).

This knowledge requirement is what makes 29 C.F.R. § 553.102 (1997) inapplicable to the case at hand. That regulation prohibits public employees from volunteering to perform the same type of services for the public agency by whom they are employed. Plaintiff advances an argument that he must be compensated for all of his time spent caring for and training Bandit since he cannot volunteer to do that for which he is already hired. We are unable to adopt this notion because it could establish municipal liability to pay overtime the employer may not have known was accumulating. While an employer must pay for work it suffers or permits, *see* 29 C.F.R. § 785.11, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing. Presumably for this reason, 29 C.F.R. § 785.12 inserts knowledge as a required element when an employee must be paid. Just as an employee is not working for the employer's benefit if the employer has no knowledge of it, so similarly, an employee cannot be considered to have volunteered his services in the sense of 29 C.F.R. § 553.102 if the employer is unaware that such services are being performed.

#### B. *Trial Court's Resolution of Employer's Knowledge*

The district court aligned the facts of this case with the Fifth Circuit's *Newton* case and

distinguished the 11th Circuit's *Department of Conservation and Natural Resources* in deciding what standards were appropriate for determining defendants' constructive knowledge. *See Holzapfel II,* 950 F.Supp. at 1276–77. On its face, *Newton* appears to be precisely parallel to the instant case. It involved a plaintiff police officer who sued the City of Henderson, Texas, to recover overtime pay for his work with the East Texas Drug Task Force. The Fifth Circuit reversed the district court's award of back-pay and liquidated damages, holding that the police chief was not responsible for checking into the overtime activities of this undercover officer, even though the chief had access to the information. *See Newton,* 47 F.3d at 749.

A close look at the reasoning reveals significant differences with the case at hand. *Newton* found in favor of the Town because: the chief explicitly ordered the officer not to work unauthorized overtime hours; the department had a "flex time" policy in place to counter-balance overtime hours; and the officer ignored the order and policy, and never demanded payment for overtime he claimed he had worked. *See id.* In contrast, Officer Holzapfel was not told to limit his activities to two hours per week, but rather was simply told that he would not be paid for more hours than that. Further, he was obligated under the Town's standard operating procedures to provide Bandit with proper care and training. There was no alternative scenario in the Town of Newburgh under which a K–9 officer would receive some form of compensation for extra hours required to tend to his police dog, such as the "flex time" policy offered by the City of Henderson. Hence, it may not be said that Officer Holzapfel failed to claim compensation because he was given no opportunity to do so.

Contrary to the district court's view, we think the instant case more closely resembles *Department of Conservation and Natural Resources.* There, suit was brought on behalf of conservation enforcement officers for unpaid overtime work they performed during deer hunting seasons over a three-year period. *See Department of Conservation and Natural Resources,* 28 F.3d at 1078–79. The Eleventh Circuit held that the agency had knowledge of this overtime work, despite repeated warnings by supervisors that overtime was prohibited. The court reasoned that because the agency had received the results of a study showing that unreported overtime was a continuing problem, and because weekly arrest reports during the deer hunting seasons revealed that enforcement officers worked more hours than they reported, the agency had both actual and imputed knowledge of the overtime. *See id.* at 1083.

Here Chief Kehoe admitted having knowledge of at least some of plaintiff's overtime activities. The chief testified he saw plaintiff engaged in off-duty K–9 training. Moreover, the chief acknowledged that the off-duty responsibilities of a K–9 officer could reach close to one hour per day, exclusive of training. That suggests Chief Kehoe knew K–9 officers could be working close to seven overtime hours per week. This evidence was sufficient for a jury to find the chief had actual as well as constructive knowledge that plaintiff worked more than two overtime hours per week.

The district court never directly instructed the jury to decide whether defendants had knowledge of plaintiff's overtime. Instead, it asked the jury to decide whether plaintiff's duties "could not reasonably be performed within such 42 hours of compensated time per week." The district court apparently thought that if plaintiff's K–9 responsibilities were so extensive they could not have been performed in his regular shift plus the two hours overtime, "constructive knowledge might be imputed" to defendants. *Holzapfel II,* 950 F.Supp. at 1276. Yet, as the above discussion of *Department of Conservation and Natural Resources* demonstrates, more than one way exists to show constructive knowledge, and it is not exclusively dependent on whether assigned duties could reasonably be performed in an allotted number of hours. *See* 29 C.F.R. §§ 785.11 & 785.12; *see also Forrester,* 646 F.2d at 414. Thus, the instructions given were too limited. The jury might well have reached a different result had appropriate instructions been given it regarding the employer's knowledge of plaintiff's overtime work.

## 526

V How Much Time a Task Should Take

Although we believe the issues regarding the first instruction have been adequately addressed by the above analysis, we must give attention to two cases cited in both briefs and in the district court's opinion denying plaintiff's motion for a new trial. The district court relied upon *Reich v. IBP, Inc.*, 38 F.3d 1123 (10th Cir.1994), and *Amos v. United States*, 13 Cl.Ct. 442 (1987), to justify inserting the "reasonableness" element in the first question given the jury regarding how much overtime plaintiff performed. The *IBP* and *Amos* courts both expressed concern regarding the time in which employees would complete a relatively "time-defined" task.

In *IBP*, after holding that employees in a meat processing plant should be paid for picking up, putting on, cleaning, and taking off protective gear, the Tenth Circuit concluded that the employer had to pay for only the reasonable amount of time it would take for a person to complete such duties. *See IBP*, 38 F.3d at 1127. This conclusion rested on the finding by the trial court that employees exercised "considerable flexibility and personal discretion with regard to the time and speed [at which] these activities took place." *Id.* Although roughly the same amount of time was involved in performing these tasks as a whole, some employees did them in immediate succession, while others took breaks in between. The Tenth Circuit did not believe that employees should be paid for the span of time it *actually* took them to conduct the requisite activities, and therefore determined that the appropriate measure was a "reasonable time."

Likewise, the *Amos* court had first to decide whether cook foremen at a correctional institution needed to be paid for walking to and from the control room to pick up necessary equipment. After determining that the activity was compensable, the Claims Court imposed a "reasonable time" limit in light of the fact that the absence of such a standard would risk rewarding employees for "lack of diligence." *Amos*, 13 Cl.Ct. at 449–50.

None of the K–9 officer compensation cases that we found address the issue of how long dog care duties should take. In some instances the amount was small enough to prevent undue concern. *See generally New York City Transit Auth.*, 45 F.3d at 652–53 (*de minimis* time); *Levering*, 869 F.Supp. at 27 (30 minutes overtime). In another, the officers and the employer reached a prior agreement setting the amount of overtime that would be awarded. *See Rudolph*, 103 F.3d at 679–80 (one-half hour overtime per day). In most cases, the courts were ruling on summary judgment motions, in which they determined only that at-home dog care is compensable, without addressing the amount of overtime involved—a decision the district court here also stopped short of making in its ruling on plaintiff's summary judgment motion. *See Holzapfel I*, 935 F.Supp. at 424.

The individual traits and needs of officers and animals preclude any easy determination as to what is a "reasonable time" for a K–9 officer to take care of his dog. Moreover, the varying amounts of time attested to at trial, in addition to the ranges of time involved in the K–9 compensation cases, suggest no clear-cut answer will be found.

We have already noted our concern with the fact that were a K–9 officer left to his own devices, he may ultimately bankrupt a K–9 unit with claims for too many unsupervised overtime hours. We are nonetheless also confident that if a jury receives proper verdict questions and instructions, it can discern how many hours of compensable "work" were performed.

We do not consider binding as a matter of law the two-hour overtime policy implemented by the Newburgh police department. While the Eighth Circuit in *Rudolph* applied 29 C.F.R. § 785.23 (1997), which provides that in light of the difficulty of calculating the precise number of hours an employee works at home, "any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted," that regulation has no application to this case. No evidence suggests that plaintiff or any K–9 officer was involved in deciding that two hours of overtime was sufficient to care for a dog. Rather, the directive appears to have been unilaterally imposed by defendants. Further, we are loathe to characterize the

policy as "reasonable," in view of Chief Kehoe's testimony that up to one hour a day, exclusive of training, could be expended on dog care activities.

Yet while 29 C.F.R. § 785.23 bears no role in this case, we pause to note that this regulation would be a useful tool by which police departments and their K–9 officers could avoid the very problems at issue here. As we have stated, the underlying concern about situations like those involving Officer Holzapfel is the difficulty an employer encounters in monitoring the number of off-duty hours a K–9 officer will spend with his assigned dog. Over-zealous employees could cause unintended bankruptcies within police departments, and ultimately force municipalities to eliminate K–9 units—despite their valuable contributions to law enforcement—because of cost. Involving both employee and employer representatives in negotiations to decide how many off-duty hours will be compensated is a simple solution benefitting all parties. K–9 officers will know precisely the extent of their responsibilities. Municipalities and their police departments can budget with relative accuracy, and minimize concern that they will be required to defend against an overtime claim involving thousands of dollars. Equally important, citizens will continue to receive the services of a K–9 unit. We see these joint agreements as the best solution to the overtime problem this case represents, and encourage their use.

### Second Jury Question

Plaintiff suggests, in addition, that the jury was improperly instructed to consider whether he trained Officer Patricola's dog at the direction of defendants, or whether defendants knew and acquiesced in this training while plaintiff had a reasonable expectation that he would be compensated for such work. As we made clear in our discussion regarding the first jury question, Officer Holzapfel is entitled to compensation for all activities that constitute "work." Consequently, with regard to Holzapfel's training this other dog, the jury should have been instructed to answer the kinds of questions we set forth in Part III B. of this opinion. The district court's use of the phrases "at the direction of" and "knowledge and acquiescence" are insufficient substitutes for the concepts embodied in the FLSA.

Such error will result in a new trial however, only if plaintiff was prejudiced by the instructions. Yet in our review of the relevant evidence, we do not see how a jury could find that Officer Holzapfel's time with Officer Patricola's dog qualifies as "work." Instead of Chief Kehoe "controlling" or "requiring" this additional training, plaintiff appears to have taken all the initiative.

It was Officer Holzapfel who approached the Chief to ask if he could be assigned to work with Officer Patricola's dog. The Chief did not authorize the assignment because he could not pay plaintiff, although he did say that plaintiff could choose to train the dog on his own time. Officer Holzapfel then made all of the necessary arrangements to switch his shifts—the police department did not schedule his hours so that he could attend the Sheriff's Department training class. Further, no evidence was submitted to the jury to indicate that plaintiff's job or relationship with the police department was made contingent upon his performing this extra training.

Without any evidence to suggest that taking Officer Patricola's dog to the class falls within the definition of "work," plaintiff could not expect a favorable verdict on this issue even if we were to remand it to the district court for a new trial. As such, while the failure to so instruct was error, it was harmless, and plaintiff was not prejudiced when the jury denied him recovery on this second claim.

Having determined that the verdict may be upheld on this basis, we need not reach the question whether the district court properly incorporated the concept of "expectation of compensation" into the second jury question. For even if that concept should have been excluded, plaintiff still has failed to establish in the first instance that his helping to train Officer Patricola's dog is compensable "work" for which he can recover overtime pay.

## CONCLUSION

In short, what qualifies as compensable work under the FLSA is determined by whether the employee's activity is controlled or required by the employer, is necessarily and primarily for the benefit of the employer, and is an integral and indispensable part of the job. A "reasonableness" standard is inappropriate in deciding how many overtime hours for which a K–9 officer should be compensated.

Accordingly, we reverse the judgment of the district court with respect to the first jury verdict question, and remand for a new trial to decide whether Officer Holzapfel worked unpaid overtime hours with his assigned dog. With respect to the second jury verdict question, even though the district court erred in its instruction, such error was harmless. We therefore affirm the jury's verdict that plaintiff is not entitled to wages for his time spent training another officer's dog.

Having considered plaintiff's other arguments and finding them to be without merit, we affirm in part, reverse in part, and remand for a new trial.